THE STATE OF OHIO, APPELLEE, *v.* SNOWDEN, APPELLANT.

(No. 81AP-1024—Decided
October 7, 1982.)

Mr. Michael Miller, prosecuting attorney, and Ms. Karen L. Martin, for appellee.

Mr. William S. Lazarow and Mr. Robert H. Cohen, for appellant.

MOYER, J. This matter is before us on defendant-appellant's appeal from a judgment of the Court of Common Pleas of Franklin County rendered on a jury verdict finding defendant guilty of one count of aggravated murder and one count of aggravated robbery.

Defendant, Donald L. Snowden, was involved in a traffic accident with Susie Beam in June 1981. Beam, who was a go-go dancer at the Bottoms Up Bar, told defendant she would pay for the damage to his vehicle, and gave him her telephone numbers at home and at work.

Defendant and Beam discussed a settlement amount of $80, which defendant testified he had difficulty collecting from Beam. After several telephone calls to Beam's residence, defendant went to the Bottoms Up Bar and talked to its manager, Tony Michaels ("Michaels"). The employees at the bar apparently were aware of the accident and of the agreement between Beam and the defendant. Michaels told the defendant that, although Beam was no longer working at the Bottoms Up, she had a check due her on the following Saturday and that the defendant would be paid on that day. A meeting between Michaels and the defendant was arranged for Saturday but later postponed until the following Monday.

On Monday when defendant arrived at the bar, the barmaid told him that Michaels was not in and that he should call Michaels later that evening. Defendant testified that, when he called the bar later that night, Michaels told him he could pick up the money at the bar. Shortly following this conversation, defendant arrived at the Bottoms Up and was told by the barmaid that Michaels was not there. Michaels was actually in the back office of the bar and, according to the testimony of a waitress, Michaels knew that the defendant was in the bar waiting for him. Defendant testified that he thought he was getting the runaround from the bar's employees, and that he had told the barmaid he wanted his money.

Defendant eventually sat down at the bar to wait for Michaels. He testified that the waitress told him that, if Beam had not yet picked up her check, it was probably beside the cash register.

When the barmaid temporarily left the bar area, defendant approached the cash register. The evidence conflicts as to whether defendant was depressing the buttons on the cash register to open the money drawer or was searching through

the papers to the left of the register when the barmaid returned and saw defendant behind the bar next to the cash register. She shouted at him and pushed a button to summon Michaels from the back office. Although it is unclear who reached for them first, defendant and the barmaid fought over two pistols which were kept on the right side of the cash register. As the barmaid released her grip, defendant, holding the pistols, saw Michaels emerge from the back office with a drawn derringer. The evidence conflicts as to whether Michaels verbally threatened the defendant. Defendant shot Michaels once and fled from the bar.

The defendant asserts the following five assignments of error in support of his appeal:

"I.  The trial court erred in overruling defendant's motions for judgment of acquittal, since the evidence was insufficient to sustain a conviction of such offenses.

"II.  The trial court erred in overruling defendant's motion to *voir dire* prospective prosecution witnesses after a separation of witnesses had been granted, and after it became apparent that a spectator was taking notes during the trial and reviewing the testimony with the witnesses.

"III.  The trial court erred in refusing to allow Jim Maynard to answer questions regarding the defendant's statements the night of the offense.

"IV.  The trial court erred in failing to give defendant's requested jury instructions on defense of property, mistake of fact, and self-defense.

"V.  The judgment of the trial court is against the manifest weight of the evidence and contrary to law."

We will first consider the second assignment of error. The general rule in Ohio is that: "[t]he trial court in a criminal prosecution is vested with discretion to admit the testimony of a witness who, without procurement or connivance of the party calling him, remained in the court-

room in violation of an order for the separation of witnesses." *State* v. *Dean* (1951), 90 Ohio App. 398 [48 O.O. 81].

The Supreme Court has held that:

"Where, in a criminal case, a witness' disobedience of an order for a separation of witnesses is not by procurement or connivance of the party calling him, a trial court may not use such disobedience as the basis for its refusal to permit the witness to testify. (Paragraph one of the syllabus in *Dickson* v. *State,* 39 Ohio St. 73, approved and followed.)" *State* v. *Cox* (1975), 42 Ohio St. 2d 200 [71 O.O.2d 186], paragraph one of the syllabus.

There was technically not a violation of the separation order in this case but, rather, a violation of the spirit of the order. A spectator apparently took notes during the testimony of witnesses and allegedly discussed their testimony with other witnesses who were not in the courtroom and who had not yet testified. It is not clear from the record that the spectator in fact gave information to prospective witnesses nor is it clear that any allegedly transmitted testimony prejudiced defendant.

The trial judge interviewed the spectator who was allegedly conversing with the witnesses about the prior testimony. She told the court, "I have not been talking about what goes on in here. I have been talking to them because I know them." The assistant prosecutor told the court he had informed the spectator of the separation order. She stated that, after her discussion with the prosecutor, she understood the separation order.

It is clear that prospective witnesses, if they were in fact receiving information concerning prior testimony from a spectator at the trial, were not receiving the information due to the procurement or connivance of the prosecutor. Furthermore, there is no evidence that defendant was harmed by the spectator's alleged revelations. It was well within the sound discretion of the trial court to allow the witnesses to testify without first being

*voir dired* as defense counsel requested. The second assignment of error is not well-taken and is overruled.

Defendant's third assignment of error concerns the testimony of James Maynard, who lived near the Bottoms Up and was a distant relative of defendant. Defendant fled to Maynard's home immediately following the shooting, and defense counsel argued at trial that the statements defendant made to Maynard should be admitted under the excited utterance exception to the rule of evidence excluding hearsay, Evid. R. 803(2). The trial court refused to allow Maynard to repeat defendant's statements to the jury.

It is the duty of the trial court to make the preliminary decision regarding the admissibility of evidence. Evid. R. 104(A). The standard to be applied by the trial court in deciding whether to admit a statement under the excited utterance exception to the hearsay rule is clearly stated in *State* v. *Duncan* (1978), 53 Ohio St. 2d 215 [7 O.O.3d 380], paragraph one of the syllabus:

"Testimony as to a statement or declaration may be admissible under an exception to the hearsay rule for spontaneous exclamations where the trial judge reasonably finds (a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, (c) that the statement or declaration related to

such startling occurrence or the circumstances of such startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration. (Paragraph two of the syllabus in *Potter* v. *Baker,* 162 Ohio St. 488 [55 O.O. 389], approved and followed.)"

If the decision of the trial court appears to be reasonable, a reviewing court may not reverse the judgment even if the reviewing court would have made a different decision. *Potter* v. *Baker* (1955), 162 Ohio St. 488, at 500 [55 O.O. 389].

Defendant's statements immediately following the shooting do not bear independent indicia of trustworthiness justifying their admission under an exception to the hearsay rule. See *State* v. *Watkins* (1981), 2 Ohio App. 3d 402. Furthermore, since defendant was permitted to tell the jury what he said to Maynard, defendant was not prejudiced by the exclusion of Maynard's testimony repeating defendant's narration. *Potter* v. *Baker, supra,* at 493.

The trial court's decision to exclude Maynard's testimony concerning defendant's statements was reasonable and, because under Evid. R. 103(A) no substantial right of the defendant was affected by the exclusion of Maynard's testimony, no reversible error was committed. Defendant's third assignment of error is not well-taken and is overruled.

Defendant divides into four parts the arguments under his fourth assignment of error concerning the trial court's refusal to give his requested jury instructions. The general rule regarding jury instructions is that "* * * if requested special instructions to the jury are correct, pertinent and timely presented, they must be included, at least in substance, in the general charge. * * *" *Cincinnati* v. *Epperson* (1969), 20 Ohio St. 2d 59 [49 O.O.2d 342], paragraph one of the syllabus; *State* v. *Clair* (Feb. 11, 1982), No. 81AP-774, unreported. The trial court properly refuses to give a requested

jury instruction when the issue covered by the instruction is not raised by the evidence. *State* v. *Linder* (1907), 76 Ohio St. 463, paragraph two of the syllabus; *State* v. *Smith* (Dec. 31, 1981), No. 81AP-298, unreported.

The first proposed jury instruction is:

"In employing force to protect his property one must act reasonably with respect to the necessity of using force and the amount of force needed. In the absence of the use of force on the part of the intruder, one is not justified in the use of such force as to inflict great bodily harm or to endanger life. Unless the circumstances render futile a request to depart or desist, such a request must precede the use of force. The amount of force which may be employed to protect property is that which appears reasonably necessary under the circumstances, and one is not required to gauge the amount thereof with nicety."

No one argues that the foregoing statement is not a correct statement of the law or that it was not timely presented. The question is whether the instruction is pertinent in light of the evidence presented. The fact that a property owner is protecting his property from a trespasser may provide the property owner with a defense of justification to a charge of harming the trespasser if he reasonably believed the killing was necessary to protect his home. *State* v. *Peacock* (1883), 40 Ohio St. 333, 334. If Michaels had harmed the defendant, Michaels might have claimed that his actions were justified since he was defending his place of business. However, Michaels was not charged with harming defendant while protecting the bar. Thus, there was no reason to give the jury instructions concerning defense of property as a justification for harm or homicide.

Defendant's proposed instruction would, in a proper case, be read in conjunction with a more basic charge stating that defense of property may justify a party's acts. Since the basic charge on defense of property is clearly inapplicable to this case, *a fortiori* defendant's proposed charge, that, in defending property, one must use only reasonable force, was clearly not required. The trial court did not err in refusing to give defendant's first proposed jury instruction.

Defendant's second proposed jury instruction upon which his fourth assignment of error is based reads:

"1. Unless the defendant had the required knowledge, he is not guilty of the crime of aggravated robbery.

"2. In determining whether the defendant had the required knowledge you will consider whether he acted under a mistake of fact regarding his right to receive funds from the Bottoms Up Bar due Susie Beam, to satisfy a debt owed to him by Susie Beam.

"3. If the defendant had an honest belief arrived at in good faith in the existence of such facts and acted in accordance with the facts as he believed them to be, he is not guilty of aggravated robbery as knowledge that one wrongfully exerted control or attempted to exert control over property belonging to another is an essential element of that offense."

Defendant was found guilty of aggravated murder in violation of R.C. 2903.01. The underlying felony was aggravated robbery. Defendant was found guilty of aggravated robbery in violation of R.C. 2911.01. The indictment charged defendant with violating R.C. 2911.01 by committing or attempting to commit a theft offense. The applicable theft statute is R.C. 2913.02 which reads in part:

"(A) No person, with purpose to deprive the owner of property, * * * shall knowingly obtain * * * control over [it] * * *:

"(1) Without the consent of the owner * * *."

Purposely and knowingly are defined in R.C. 2901.22. Purposely refers to a "* * * specific intention to cause a certain result * * *" and knowingly means that the actor, "* * * regardless of his pur-

pose, * * * is aware that his conduct will probably cause a certain result. * * *"

Mistake of fact is widely recognized as a defense to specific intent crimes such as theft since, when the defendant has an honest purpose, such a purpose provides an excuse for an act that would otherwise be deemed criminal. *Farrell* v. *State* (1877), 32 Ohio St. 456. When defendant, due to a mistake of fact, does not have the specific *mens rea* required by the statute, the maxim *ignorantia facti excusat* applies.

Although defendant's proposed jury instruction states that mistake of fact may negate the "knowingly" element of the theft offense, and, under the facts presented by this case, the instruction would more appropriately refer to the "purposely" element, this discrepancy is not fatal to defendant's fourth assignment of error. Mistake of fact can, in an appropriate circumstance, negate either "knowingly" or "purposely." Defendant's proposed instruction is substantially correct. Since the instruction was proposed in a timely manner, the only inquiry remaining under *Cincinnati* v. *Epperson, supra,* is whether the proposed instruction was pertinent to the facts of the case.

Defendant claims that, since he reasonably believed he had a right to receive Beam's pay check in satisfaction of the debt arising out of their automobile accident, he did not have the specific intent to deprive the owner of property which is required for a finding of guilt under R.C. 2913.02. There is sufficient evidence in the record which tends to show that defendant, although his belief may have been erroneous, believed he had a right to receive money from Beam via the Bottoms Up or Michaels. This argument is supported by testimony that defendant knew Beam had not yet picked up her pay check or receipt; that defendant had been told that the pay checks were in or near the cash register; that defendant said he wanted *his* money; that Beam and defendant had agreed that she would pay him $80; and that the cash register lights displayed $80 after defendant went behind the bar.

Because there was evidence from which a jury could believe that defendant did not intend to steal money not belonging to him, and because the proposed instruction was timely presented, the instruction was improperly refused. The refusal was prejudicial to defendant because the aggravated murder conviction rested upon the felony of aggravated robbery, which was based on the commission of a theft offense to which mistake of fact would be a defense.

Defendant's third claim, that the trial court's instruction with respect to self-defense unconstitutionally shifted the burden of proof to defendant by requiring him to prove his affirmative defense by a preponderance of the evidence, is not well-taken. There was no error in the instruction. R.C. 2901.05(A) is not unconstitutional in placing the burden of proving self-defense upon the defendant. *Carter* v. *Jago* (C.A. 6, 1980), 637 F.2d 449.

The fourth branch of defendant's fourth assignment of error asserts that the trial court erred by not giving the jury the standard Ohio jury instruction with respect to excessive force found at 4 OJI 411.33. The trial court gave a comprehensive jury instruction on self-defense. The defendant is entitled only to have the law stated correctly by the trial court, not to have his proposed jury instruction presented to the jury. The jury was properly instructed by the trial court with respect to the test they were to apply in determining whether defendant acted in self-defense when he shot Michaels.

Defendant's assignment of error with respect to the trial court's failure to instruct the jury on mistake of fact is sustained, and the remainder of the fourth assignment of error is overruled.

Defendant's first and fifth assignments of error both attack the weight and

sufficiency of the evidence upon which the jury rendered its verdict.

Defendant's first assignment of error claims that the trial court erred in overruling his motions for a judgment of acquittal. The standard for granting a judgment of acquittal is well-established and well-stated in the case of *State* v. *Bridgeman* (1978), 55 Ohio St. 2d 261 [9 O.O.3d 401]:

"* * * [A] court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."

In the case *sub judice*, there was sufficient evidence upon which a jury could have found defendant either guilty or not guilty. Since reasonable minds could have reached different conclusions regarding defendant's guilt, the trial court did not err in overruling defendant's motion for a judgment of acquittal.

Defendant's fifth assignment of error claims that the judgment of the trial court was against the manifest weight of the evidence and contrary to law. Applying the test stated in *State* v. *Swiger* (1966), 5 Ohio St. 2d 151 [34 O.O.2d 270], and for the reasons stated in our disposition of the first assignment of error, the fifth assignment of error is not well-taken and both the first and the fifth assignments of error are overruled.

For the foregoing reasons, the judgment of the trial court is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion and in accordance with law.

*Judgment reversed*
*and cause remanded.*

WHITESIDE, P.J., and McCORMAC, J., concur.