OPINION
By complaints filed May 27, 1999, defendant, Allen Harbuck, was charged with criminal trespass, in violation of Columbus City Codes ("C.C.") 2322.21, and resisting arrest, in violation of C.C. 2321.33. The matter came on for trial in the Franklin County Municipal Court, and the jury found defendant not guilty of criminal trespass but guilty of resisting arrest. Thereafter, the court pronounced sentence and judgment was entered accordingly. Defendant now brings this appeal, asserting the following assignments of error:
 [1.] The trial court erred by failing to give the defendant's proposed jury instructions on specific intent and mistake of fact when adequate facts were in evidence to support both instructions.
 [2.] The trial court erred when it entered judgment against the defendant when the jury verdict was against the manifest weight of the evidence.
The charges against defendant arose from an incident which occurred on May 27, 1999, at the Georgia-Pacific plant in Columbus, Ohio. On that date, defendant, an employee of Georgia-Pacific, was called into a meeting with his supervisor, Tom Martin, and Burt Peay, the plant office manager. During this meeting, defendant was informed that he was being placed on administrative leave as a result of an incident that had occurred at the plant on May 24, 1999. Mr. Martin told defendant to collect his personal belongings and leave the premises immediately thereafter. Approximately fifteen minutes later, after receiving word that defendant was refusing to leave, Mr. Martin went to defendant's office and informed him that he had to leave the premises. Defendant requested that Mr. Martin reduce to writing the conversation that had transpired in the meeting. Mr. Martin agreed and, upon handing the writing to defendant, once again asked him to leave. Defendant informed Mr. Martin that he was not going to leave.
After conferring with company attorneys, Mr. Martin again went to defendant's office and told him to leave the premises. Defendant again refused to leave. After a second conference with company attorneys, Mr. Martin told defendant that if he did not comply with the request to leave the premises, he would be removed therefrom. Once again, defendant refused to leave. Mr. Martin left and returned a few minutes later with two plainclothes Columbus police officers. Mr. Martin again informed defendant that he should leave and that the authorities would remove him if he did not. Defendant once again refused to leave.
After being informed by Mr. Martin that defendant had refused to leave the premises, the two officers, Robert Moledor and Jeff Wilson, entered defendant's office, identified themselves as Columbus police officers, and asked defendant to comply with Mr. Martin's request to leave the property. According to Officer Moledor, defendant repeatedly asked the officers who they were and demanded to see their identification. Officer Moledor stated that he and Officer Wilson identified themselves as Columbus police officers and displayed their identification several times. Officer Moledor further testified that, throughout the encounter with defendant, his police badge was displayed on his belt and his identification was hanging around his neck; Officer Wilson had his badge in a leather badge carrier with his badge on one side and his identification on the other.
Officer Moledor asked defendant to leave two or three times and advised him that his failure to do so could lead to his arrest. Defendant told the officers that he was "not going anywhere." (Tr. 93.) At that point, Officer Moledor informed defendant that he was under arrest for criminal trespass and asked him to stand up and place his hands behind his back. According to Officer Moledor, defendant ignored the request and "hunkered down in the chair and sort of braced himself in the chair." (Tr. 93.) Officer Moledor took hold of defendant's left arm in an attempt to lift him from the chair. Defendant struggled to pull his arm away. Defendant then extended his feet and his right arm outward in an attempt to hold Officer Wilson at bay. When Officer Wilson extracted a canister of chemical mace from his firearm garment bag, defendant kicked at Officer Wilson and attempted to grab the canister out of his hand. Eventually, the officers were able to handcuff defendant and place him under arrest.
Defendant testified that Mr. Martin informed him that he was being placed on administrative leave as a result of the May 24, 1999 incident and that he should leave the premises after packing his personal belongings. Defendant further testified that during the time he was packing, Mr. Martin stopped by several times to monitor his progress. During his final conversation with Mr. Martin, defendant told him he would leave as soon as he finished packing.
A short time later, two gentlemen who identified themselves as Columbus police officers came into his office and informed him that he had to leave the premises. Defendant testified that although the men produced what appeared to be identification, he was skeptical as to the authenticity of the identification. Defendant told the men that he would not leave the premises until they allowed him to examine their identification; the men stated that they were not obligated to reproduce their identification. According to defendant, this same colloquy occurred four or five times. Due to the men's refusal to permit defendant to examine their identification, defendant did not believe them to be Columbus police officers; rather, he believed them to be Georgia-Pacific security personnel. As such, he "resist[ed]" (Tr. 148) their efforts to handcuff him. Defendant admitted that he "got a pretty good adrenaline rush at that point. And I started pulling forward, and I thought I better not pull hard or I will hurt somebody." (Tr. 148.) Defendant further testified that "the other gentleman was trying to put a handcuff on [my arm] and he couldn't do it. He found that if he released it with one hand, I could pull it back up against my chest." (Tr. 149.)
By his first assignment of error, defendant contends that the trial court erred in not submitting to the jury his proposed instructions on the issues of "purposely" and "mistake of fact." Defendant was charged with resisting arrest in violation of C.C. 2321.33(A)[1]:
 No person, recklessly or by force, shall resist or interfere with a lawful arrest of himself or another.
Defendant asserts that the trial court should have given the jury the following charges on "purposely" and "mistake of fact":
PURPOSELY, MOTIVE
 PURPOSE to resist arrest is an essential element of resisting arrest. A person acts "purposely" when it is their specific intention to cause a certain result. It must be established in this case that at the time in question there was present in the mind of Allen Harbuck a specific intention to resist, by force, his lawful arrest by an authorized police officer engaged in the performance of his duties.
 "Purpose" is a decision of the mind to do an act with a conscious objective of producing a specific result or engaging in specific conduct. To do an act purposely is to do it intentionally and not accidentally. Purpose and intent mean the same thing.
 The purpose with which a person does an act is determined from the manner in which it is done, the means used and all the other facts and circumstances in evidence.
 MISTAKE OF FACT Unless the Defendant had the required purpose or knowledge, he is not guilty of the crime of resisting arrest. In determining whether the Defendant had the required purpose or knowledge, you will consider whether he acted under a mistake of fact regarding whether the two officers were authorized police officers engaged in the performance of their duties.
 If the Defendant had an honest belief arrived at in good faith, in the existence of such facts and acted in accordance with the facts as he believed them to be, he is not guilty of resisting arrest as a purpose to resist, by force, his lawful arrest by authorized police officers engaged in the performance of their duties is an essential element of that offense. [Defendant's 11/11/99 Proposed Jury Instructions.]
The city contends that resisting arrest by force is not a crime of specific intent; thus, the trial court did not err in denying defendant's request for jury instructions on "purposely" and "mistake of fact."
A defendant in a criminal case is entitled only to have the law stated correctly by the trial court, not to have his proposed jury instructions presented to the jury. State v. Snowden (1982), 7 Ohio App.3d 358, 363. Where requested jury instructions are correct statements of the law as applied to the facts of the case, they should generally be given. Murphyv. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585, 591. However, "[a]bstract rules of law or general propositions, even though correct, ought not to be given unless specifically applicable to facts in issue."State v. Guster (1981), 66 Ohio St.2d 266, 271, citing State v.Loudermill (1965), 2 Ohio St.2d 79. The decision as to the contents of the jury charge is left to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. Id.
Initially, we note that defendant points to no authority for the proposition that the crime of resisting arrest by force requires the culpable mental state of purposely. Nowhere in the ordinance does the word "purposely" appear. Furthermore, we agree with the city's position that resisting arrest by force is a strict liability offense.
In Findlay v. Clark (Feb. 12, 1996), Hancock App. No. 5-95-8, unreported, the Third District Court of Appeals considered the requisite mental state for a person charged with resisting a lawful arrest by force:
 R.C. 2921.33(A) and Findlay City Ordinance 525.09(a) read "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of himself or another." Force is defined as "any violence, compulsion, or constraint physically exerted by an means upon or against a person or thing." R.C. 2901.01(A). In addition, R.C. 2901.21(B) provides:
 "[w]hen the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in such section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense."
The Supreme Court of Ohio in State v. Wac, [1981], 68 Ohio St.2d [84] at 86 found that R.C. 2915.02(A)(1), which read that "'[n]o person shall * * * [e]ngage in bookmaking, or knowingly engage in conduct that facilitates bookmaking * * *'" imposed differing degrees of culpability. The court stated "[t]he General Assembly included the culpable mental state of `knowingly' as an element of facilitating bookmaking[;] [n]evertheless, there is no such requirement in the same subsection for bookmaking per se." Id. The court's rationale is applicable to Findlay City Ordinance 525.09(a) and R.C. 2921.33(A). As stated previously, both provisions provide that a person may resist arrest "recklessly or by force." This language indicates that recklessly is only an element of one type of resisting arrest. Moreover, the language clearly imposes strict liability upon an individual who resists a lawful arrest by force. See State v. Keegan (1990), 67 Ohio App.3d 824, 827 (finding that R.C. 2921.33 provides "that the resistance or interference may be either reckless or by force").
This court agrees with the analysis of the Hancock County Court of Appeals and holds that the exclusion of a culpable mental state for resisting arrest by force in the same subsection that includes the mental state of recklessness as the standard for all other acts of resistance plainly indicates a purpose to impose strict criminal liability for acts of resistance by force. Accordingly, the trial court did not err in refusing to submit defendant's proposed jury instruction on the culpable mental state of "purposely."
Similarly, we find no error in the trial court's refusal to submit defendant's proposed instruction on "mistake of fact." Generally, "[i]gnorance or mistake of fact is a defense if it negates a mental state required to establish an element of a crime, except that if the defendant would be guilty of a crime under facts as he believed them, then he may be convicted of that offense." State v. Pecora (1993), 87 Ohio App.3d 687,690. "Mistake of fact is widely recognized as a defense to specific intent crimes such as theft since, when the defendant has an honest purpose, such a purpose provides an excuse for an act that would otherwise be deemed criminal." Snowden, supra, at 363, citing Farrell v. State
(1877), 32 Ohio St. 456. "When defendant, due to a mistake of fact, does not have the specific mens rea required by the statute, the maximignorantia facti escusat applies." Snowden, supra. As such, "mistake of fact can, in an appropriate circumstance, negate either "knowingly" or "purposely." Id.; see, also, State v. Neville (Nov. 17, 1998), Noble App. No. 235, unreported. Where the defendant is not charged with a specific intent crime, the trial court does not abuse its discretion in failing to give a jury instruction on mistake of fact. Id.
As determined above, resisting arrest by force is not a specific intent crime. Where, as here, the defendant is not required to have a specific intention to commit a crime, his honest belief in a mistaken fact is irrelevant to the crime charged. Thus, the trial court did not err in refusing to give defendant's proposed instruction on "mistake of fact." Accordingly, the first assignment of error is overruled.
By his second assignment of error, defendant challenges his conviction as being against the manifest weight of the evidence. Specifically, defendant asserts that the jury's acquittal of defendant on the criminal trespass charge "raises the issue of whether the officers had sufficient grounds to initiate the arrest." (Defendant's brief at 6.) Defendant also contends that "reasonable doubt had to exist in the minds of the jury as to whether Appellant understood the two men to be police officers * * *." (Defendant's brief at 6.)
While a "sufficiency" challenge tests whether the prosecution's case is legally adequate to go to the jury, a "weight" of the evidence argument concerns the "rational persuasiveness" of the evidence and tests whether the evidence was enough to sustain the prosecution's burden of proof. See State v. Thompkins (1997), 78 Ohio St.3d 380, 386-387.
An appellate court's role in a manifest weight of the evidence inquiry is to determine whether the evidence produced at trial "attains the high degree of probative force and certainty required of a criminal conviction." State v. Getsy (1998), 84 Ohio St.3d 180, 193. To make such a determination, an appellate court must "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted." State v. Stepp (1997), 117 Ohio App.3d 561, 567. If the record contains substantial evidence upon which a trier of fact could conclude that the prosecution proved its case beyond a reasonable doubt, an appellate court may not reverse a conviction. Getsy, supra, at 193-194.
Even though a manifest weight of the evidence challenge requires an appellate court to review the record and weigh the evidence, such review is tempered by the principle that questions of weight and credibility are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
Turning first to defendant's contention that the jury's "not guilty" verdict on the charge of criminal trespass raises an issue as to the lawfulness of the arrest for that crime, we note that C.C. 2321.33(A) expressly specifies that a "lawful arrest" is an element of the offense of resisting arrest. Although the arrest for the underlying offense must be "lawful," it is not necessary for the prosecution to prove that the defendant was in fact guilty of that offense to uphold a conviction for resisting arrest. State v. Salsalone (1991), 71 Ohio App.3d 284, 285. An arrest is "lawful" if the surrounding circumstances would give a reasonable police officer cause to believe that an offense has been or is being committed. Id.
In the instant case, defendant was arrested for criminal trespass. C.C. 2311.21(A)(4) provides, that "[n]o person, without privilege to do so, shall do any of the following: * * * (4) [b]eing on the land or premises of another, negligently fail or refuse to leave upon being notified to do so by the owner or occupant, or the agent or servant of either." Mr. Martin testified that he asked defendant to leave the premises of Georgia-Pacific no less than five times. He also told defendant that if he did not leave the premises, the "authorities" would remove him therefrom. Officer Moledor testified that after Mr. Martin informed the officers of defendant's refusal to leave, he and Officer Wilson entered defendant's office and asked him to comply with Mr. Martin's request to leave the premises. Officer Moledor repeated this request several times and advised defendant that his failure to comply could lead to his arrest. When defendant refused to leave, Officer Moledor informed defendant that he was under arrest.
In light of this testimony, we find that the evidence presented to the jury clearly establishes that the arrest for criminal trespass was lawful, i.e., that Officer Moledor had reasonable cause to believe that defendant had committed the offense of criminal trespass.[2] The fact that the jury returned a "not guilty" verdict on the criminal trespass charges does not mean that the arrest for criminal trespass was unlawful or, as defendant argues, that the jury did not believe that he should have been charged with criminal trespass. The burden of proof in a criminal trial is "beyond a reasonable doubt," which is a far more stringent standard that that of "reasonable cause to believe" which was all that was necessary for the officer to arrest defendant for criminal trespass. Accordingly, the fact that defendant was acquitted of criminal trespass is of no consequence.
We further find no merit to defendant's argument that the jury should not have found him guilty of resisting arrest because he did not realize that the men who confronted him in his office and requested that he leave the premises were police officers. Officer Moledor testified that he and Officer Wilson identified themselves as Columbus police officers upon entering defendant's office. Officer Moledor further testified that his badge was displayed, in the open, on his belt and his identification hung from around his neck during the entire encounter with defendant. He further testified that Officer Wilson displayed the badge and identification that he carried by holding it out in front of defendant during the course of their conversation. Defendant acknowledged that the officers identified themselves as police officers and displayed their badges and identification. Despite this admission, defendant testified that he did not know that the men were police officers.
The jury, as trier of fact, had the opportunity to observe both defendant's and Officer Moledor's demeanor and weigh their credibility. Clearly, the jury found Officer Moledor's testimony to be more credible than defendant's on this issue. There is no evidence that the jury, as trier of fact, clearly lost its way and created such a manifest miscarriage of justice that the judgment against defendant must be reversed. For the foregoing reasons, we cannot find that defendant's conviction for resisting arrest was against the manifest weight of the evidence. Accordingly, the second assignment of error is overruled.
Having overruled both of defendant's assignments of error, this court hereby affirms the judgment of the Franklin County Municipal Court.
BRYANT and TYACK, JJ., concur.
[1] C.C. 2321.33(A) is identical to R.C. 2921.33(A).
[2] We note that the trial court's jury instructions on the charge of resisting arrest were erroneous. The court began the instructions by telling the jury that in order to find defendant guilty, the jury had to find beyond a reasonable doubt that "the defendant, by force, resisted the lawful arrest of himself." The court defined "force" and "arrest." The definition of "arrest" was taken from Ohio Jury Instructions Form 521.33, paragraph 5, which defines "arrest" without regard to whether the arrest was lawful. The court did not give the definition of "lawful arrest" as suggested by Ohio Jury Instructions Form 521.33, paragraph 6. The court then gave the following instruction: "In the absence of excessive and unnecessary force by an arresting officer, a private citizen may not use force to resist arrest by one he knows or has good reason to believe is an authorized police officer engaged in the performance of his duties, whether or not the arrest is illegal under these circumstances." (Tr. 217-218.) This instruction has been held to be erroneous regarding a charge of resisting arrest under R.C. 2921.33(A), as the instruction is derived from an Ohio Supreme Court decision,Columbus v. Fraley (1975), 41 Ohio St.2d 173, which construed a Columbus city ordinance which did not make lawfulness of the arrest an element of the crime. See State v. Hendren (1996), 110 Ohio App.3d 496. We believe that the jury could reasonably have concluded from the instructions given that it could find defendant guilty of resisting arrest even if the arrest was not lawful. However, defendant did not object to the instructions at trial, nor does he assign as error the instructions as given. Indeed, the jury instructions proposed by defendant included language nearly identical to that given by the trial court. Given defendant's argument regarding the lawfulness of his arrest for criminal trespass, however, we are compelled to conduct a plain error analysis pursuant to Crim.R 52(B). An incorrect jury instruction does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise. State v. Long (1978),53 Ohio St.2d 91, paragraph two of the syllabus. As noted above, the testimony of Officer Moledor clearly established that the arrest for criminal trespass was lawful, i.e, that he had reasonable cause to believe that defendant committed the offense of criminal trespass. Accordingly, the outcome of the trial would not have been different had the jury been given the proper instruction on "lawful arrest."