JOURNAL ENTRY and OPINION
Defendant-appellant, Grover A. Holden, appeals his convictions for theft and aggravated burglary. For the reasons below, we reverse.
In January 2000, Holden's father was hired by Ray Sohrabi, the property manager of an apartment complex located in Cleveland, to clean and repair furnaces.
Holden's brother-in-law, Michael Sheppard, was also hired by Sohrabi to repair and remodel the empty units at the apartment complex. Sohrabi provided Holden's father with keys to the apartment complex. Holden and his father both testified that Sohrabi wanted Holden's father to buy the materials for the remodeling work and act as the building manager.
In addition to the repair work, Holden's father solicited tenants for the empty units at the apartment complex. Holden's father rented three units and collected rent and security deposits from new and existing tenants. Sohrabi found out about the rent collection and told Holden's father to bring the rent money to his office and he would reimburse Holden's father for the remodeling items.
Holden accompanied his father to the meeting with Sohrabi. Sohrabi did not permit Holden into the office while he met with his father; however, Holden testified that he heard Sohrabi tell his father to "go get his stuff." Holden's father also testified that Sohrabi fired him at the meeting and instructed him to remove the materials and the tools from unit 6.
Sohrabi testified that he instructed Holden's father to return his keys, told him that he was not welcome at the apartment, and if Holden's father returned there, Sohrabi would call the police.
The day after this meeting, Sohrabi called Sheppard and the two men changed all of the locks at the apartment. While changing the locks, Sohrabi and Sheppard were most concerned with unit 6 because the remodeling and repair materials and Sheppard's tools were contained in that unit. They testified that they saw these items in unit 6 on February 16, 2000. At approximately midnight, Holden's father came to Sheppard's home looking for the keys to the apartment.
On February 17, 2000, Sheppard did not want to go to the apartment alone because Holden's father had threatened him the night before. Sheppard called the police who met him there at approximately 8:30 a.m., walked through the apartment complex with him, and then left. At approximately 11:00 a.m., Holden's father called Sheppard at the apartment and said that he was going to "kick the damn doors down" and "take all the stuff." Sheppard immediately called Sohrabi who called the police.
From a parking lot across the street, Sheppard saw Holden and his father arrive at the apartment. Holden placed a barrel under the window of unit 6 and popped the window open with a pen knife. Holden then let his father in through the door of the apartment.
Holden and his father both testified that they did not break into the apartment through a window, but that a tenant let them into the building. Holden testified that his father told him that the tools and materials in unit 6 belonged to him. Holden's father also testified that the tools and materials were his, and that Sheppard had taken them without his permission.
After the items were removed from unit 6, Sheppard approached Holden's father's van and saw the materials that had been stored in unit 6 inside the van. Sheppard testified that Holden and his father stole approximately $750 worth of Sheppard's tools from unit 6. Sohrabi testified that remodeling materials valued at $1,961.27 were taken from unit 6.
Sheppard described each tool that belonged to him that was in unit 6, and testified that the only tool which was Holden's father's was a torch.
Holden was indicted on one count of burglary, one count of theft for taking Sheppard's tools, and another count of theft for taking the doors and wood molding from the apartment. A jury found him guilty on all counts.[1] The court sentenced Holden to two years of community control sanctions with conditions.
Holden raises the following assignments of error:
 I. GROVER A. HOLDEN'S RIGHTS UNDER ART. I. SECT. 16 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WERE VIOLATED, AND HE WAS IMPROPERLY DENIED A CRIM. R. 29 ACQUITTAL OF AGGRAVATED BURGLARY AND THEFT, WHEN HE ENTERED AN UNOCCUPIED APARTMENT WITH THE PURPOSE TO ASSIST HIS FATHER IN OBTAINING HIS FATHER'S TOOLS AND BUILDING MATERIAL AND NEVER HAD A PURPOSE TO DEPRIVE ANYONE OF THAT PROPERTY AND NEVER DID SO.
 III. THE CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In his first assignment of error, Holden argues that the State did not have a sufficient amount of evidence to establish all the elements required to convict him of aggravated burglary and two theft violations. In his third assignment of error, Holden argues that the jury's finding of guilt is against the manifest weight of the evidence.
The concept of sufficiency of evidence is defined in State v. Thompkins (1997), 78 Ohio St.3d 380, 386-87, as follows:
 With respect to sufficiency of the evidence, "`sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Black's Law Dictionary (6 Ed. 1990) 1433 * * * sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict, is a question of law. State v. Robinson (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148.
The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two at syllabus.
The standard of review for determining whether the trial court's decision was against the manifest weight of the evidence is also set forth in Thompkins, citing State v. Martin (1983), 20 Ohio App.3d 172,175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721, as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Resolving inconsistencies in the evidence and determining the credibility of the witnesses is primarily up to the fact finder. State v. DeHass (1967), 10 Ohio St.2d 230, 231, 227 N.E.2d 212, 213. See, also, State v. Jenks (1991), 61 Ohio St.3d 259, 279, 574 N.E.2d 492,507, which provides:
 It is not the function of an appellate court to substitute its judgment for that of the fact finder. Rather, upon appellate review, the evidence must be viewed in the light most favorable to the prosecution.
The statute at issue, R.C. 2911.12(A)(3), provides:
 (A) No person, by force, stealth, or deception, shall do any of the following:
 (3) Trespass in an occupied structure or in a separately secured or separately occupied portion of any occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense.
Holden argues that the State failed to prove that unit 6 was an occupied structure as defined by R.C. 2909.01(C), and that Holden entered unit 6 with the intent to commit a criminal offense. Thus, Holden claims the State has failed to establish the requisite elements of R.C.2911.12(A)(3).
There is no question that unit 6 of the apartment complex was an occupied structure. R.C. 2909.01, in pertinent part, defines an occupied structure as follows:
 (C) "Occupied structure" means any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies:
 (4) At the time, any person is present or likely to be present in it.
Although under repair, unit 6 was occupied. Holden argues that the situation at hand is similar to State v. Collier (1984), 22 Ohio App.3d 25,488 N.E.2d 887, wherein the court determined that a hotel room under repair and blocked off to patrons constituted an unoccupied structure, and thus an essential element of R.C. 2911.12 was missing. However, in dicta the Collier court noted that the offense occurred at 10:30 p.m. when repair personnel were unlikely to be present. Collier,22 Ohio App.3d at 30.
In contrast, Holden broke into unit 6 at 12:00 p.m. Further, Sheppard testified that he was present at the building, and that Holden and his father were aware of his presence because Holden's father called Sheppard on his cell phone minutes before their arrival. As stated by this court in State v. Ashford (Dec. 11, 1986), Cuyahoga App. No. 51366, unreported, "[t]he gist of the term `occupied' is the actual or likely presence of a person at the time of the offense." The facts presented at trial established that although Sheppard was not actually present in unit 6, he was likely to be present at the time of Holden's offense. Thus, for purposes of R.C. 2911.12 the structure was occupied.
Furthermore, R.C. 2911.12 (A)(3) provides an alternate basis for a burglary conviction where an individual lawfully enters the occupied structure but unlawfully enters separately secured or occupied areas of that structure. State v. Mayernick (Oct. 25, 1990), Cuyahoga App. No. 57660, unreported. Thus, whether Holden and his father broke through the window or were let into the building by a tenant is of no consequence. After the lawful entry of the building, Holden unlawfully entered the separately secured unit 6. Therefore, Holden's contention that the structure was unoccupied is without merit.
Next, we must determine whether Holden entered unit 6 with the intent to commit a criminal offense — the offense of theft.
Holden maintains that the State failed to establish an essential element of each theft charge brought against him because he was sincerely mistaken in believing the items that he took from unit 6 belonged to his father and not Sohrabi or Sheppard.
R.C. 2913.02 provides:
 (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 (1) Without the consent of the owner or person authorized to give consent.
Holden's argument that insufficient evidence existed to support the theft conviction based on his act of taking the wood moldings and doors has merit.
Sohrabi was aware that Holden's father had purchased materials for the apartment building, but he was not aware of the specific items purchased. Further, Sohrabi claims that Holden's father purchased the materials with the money that he collected from the tenants, and thus these items were Sohrabi's property. However, Holden's father testified that he purchased the materials with his credit card. Sheppard, who was present when Holden's father purchased the materials, also testified that Holden's father purchased the materials with his own credit card. Further, Sheppard testified that Holden's father bought all of the remodeling supplies that he used in the empty units, including wood, doors, locks and plumbing supplies. Sohrabi also testified that at least one of the purposes of the meeting with Holden's father was to reimburse him for the remodeling materials that he had purchased.
Thus, since Holden's father purchased the materials with his personal credit card, and since Sohrabi had not reimbursed him for these materials, arguably the wood moldings and doors belonged to Holden's father.
Therefore, sufficient evidence existed to support Holden's belief that his father was the rightful owner of the wood moldings and doors taken from unit 6. As such, Holden did not have the specific intent to deprive the owner, Sohrabi, of his property which is required for a finding of guilt under R.C. 2913.02. See State v. Snowden (1982), 7 Ohio App.3d 358. Accordingly, an essential element of the theft offense has not been met. Therefore, insufficient evidence existed to support a conviction of theft in regard to Holden's action of taking the remodeling materials from unit 6.
In regard to the theft of Sheppard's tools, a thorough review of the record reveals no evidence that Holden had the purpose to deprive the owner of property or that he knowingly exerted control over property without the owner's consent. He overheard Sohrabi tell his father to "get his stuff." His only connection to the alleged theft was to help his father "get his stuff." Sheppard's only mention of Holden's involvement with the remodeling job at the apartment was that Holden, "helped [him] one day move stuff around." (Tr. 137). Holden testified that he removed his father's tools. No evidence was presented to show that he knew Sheppard owned the tools. Holden merely followed his father's directions and removed his father's property from unit 6.
Therefore, the State failed to establish that Holden entered the building with the purpose to commit a criminal offense, an essential element of aggravated burglary, or with the purpose to deprive the owner of property without the owner's consent, an essential element of theft.
Thus, construing the conflicting evidence in the light most favorable to the prosecution, the verdict was against the manifest weight of the evidence with regard to the aggravated burglary and theft charges. Accordingly, Holden's first and third assignments of error are well taken and his convictions are vacated.
Holden has also raised three additional assignments of error:
 II. APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY ART. 1, SECT. 10, OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND HIS RIGHT TO A FAIR TRIAL GUARANTEED BY THE DUE PROCESS PROVISIONS OF ARTICLE I, SECTION 16 OF THE OHIO STATE CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN COUNSEL DID NOT REQUEST A JURY INSTRUCTION ON MISTAKE OF FACT WHICH WOULD NEGATE THE KNOWLEDGE OR PURPOSE ELEMENT OF THEFT AND BURGLARY.
 IV. WHEN APPELLANT WAS CONVICTED OF TWO COUNTS OF THEFT FOR ONE ACT, ONE CONVICTION IS PLAIN ERROR IN VIOLATION OF R.C. 2941.25 (ALLIED OFFENSES) AND A DENIAL OF APPELLANT'S RIGHTS TO PROTECTION FROM DOUBLE JEOPARDY GUARANTEED BY ART. 1, SECT. 10 OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
 V. APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY ART. 1, SECT. 10
OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND HIS RIGHT TO A FAIR TRIAL GUARANTEED BY THE DUE PROCESS PROVISIONS OF ARTICLE I, SECTION 16 OF THE OHIO STATE CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN COUNSEL DID NOT OBJECT TO THE FAILURE TO MERGE THE THEFT OFFENSES, WHICH TOOK PLACE SIMULTANEOUSLY.
Our discussion above renders these assignments of error moot pursuant to App.R. 12(A)(1)(c).
Judgment reversed and convictions vacated.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellant recover of said appellee his costs herein.
It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, A.J., and TERRENCE O'DONNELL, J., CONCUR.
[1] Holden's father was convicted of the same offenses at a joint trial and received the same sentence. His convictions were affirmed in State v. Grover C. Holden (July 5, 2001), Cuyahoga App. No. 78594, unreported.