[Cite as *State v. Thompson*, 2017-Ohio-8375.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT


State of Ohio,                          :

    Plaintiff-Appellee,            :

                                No. 16AP-812

v.                                      :        (M.C. No. 2016 CRB 16315)

Tyon Thompson,                          :        (REGULAR CALENDAR)

    Defendant-Appellant.           :


D E C I S I O N

Rendered on October 31, 2017


**On brief:** *Richard C. Pfeiffer, Jr.*, City Attorney, and *Orly Ahroni*, for appellee. **Argued:** *Orly Ahroni*.

**On brief:** *Yeura R. Venters*, Public Defender, and *David L. Strait*, for appellant.


APPEAL from the Franklin County Municipal Court

SADLER, J.

{¶ 1} Defendant-appellant, Tyon Thompson, appeals from a judgment of conviction and sentence entered by the Franklin County Municipal Court pursuant to a jury verdict finding him guilty of one count of criminal mischief, a violation of R.C. 2909.07(A)(1).

## I. GENERAL FACTS AND PROCEDURAL HISTORY

{¶ 2} The case began with complaints charging appellant with one count of criminal damaging, in violation of R.C. 2909.06, one count of criminal mischief, in violation of R.C. 2909.07, and one count of disorderly conduct, in violation of R.C. 2917.11, all three charges arising out of the same incident occurring on June 24, 2016. The case proceeded to jury trial in which appellant represented himself. The jury

returned not guilty verdicts on the criminal damaging and disorderly conduct charges and a guilty verdict on the criminal mischief count. The court imposed a fine of $250 plus court costs.

## II. ASSIGNMENTS OF ERROR

{¶ 3} Appellant timely appeals and brings the following two assignments of error for our review:

> [1.] The judgment of the trial court was not supported by sufficient credible evidence.
>
> [2.] The judgment of the trial court is against the manifest weight of the evidence.

### A. First Assignment of Error

{¶ 4} Appellant's first assignment of error asserts that there was insufficient evidence to convict him as matter of law. Sufficiency of the evidence is a legal standard that tests whether the evidence is legally adequate to support a verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Whether the evidence is legally sufficient to support a verdict is a question of law, not fact. *Id.* In determining whether the evidence is legally sufficient to support a conviction, " '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The verdict will not be disturbed on appeal on the basis of insufficient evidence unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001). A reversal based on insufficient evidence has the same effect as a not guilty verdict because such a determination "means that no rational factfinder could have voted to convict the defendant." *Tibbs v. Florida*, 457 U.S. 31, 41 (1982).

{¶ 5} In a sufficiency-of-the-evidence inquiry, appellate courts do not assess whether the prosecution's evidence is credible but only whether the evidence, if believed, supports the conviction. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79-80 (evaluation of witness credibility not proper on review for sufficiency of evidence);

*State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4 (noting that "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime"). As a result, "the testimony of one witness, if believed by the jury, is enough to support a conviction." *State v. Strong*, 10th Dist. No. 09AP-874, 2011-Ohio-1024, ¶ 42; *see also State v. Clark*, 10th Dist. No. 15AP-926, 2016-Ohio-5493, ¶ 25.

{¶ 6} The charges against appellant arose out of an incident in which he allegedly destroyed a surveillance camera in the common area of his shared office space. The principal witness for the prosecution was Buffie Patterson, the other occupant of the office space, who had installed the security camera in question. Patterson testified that she was the primary tenant for the office space, which included a common area and two individual offices. Appellant sublet one of the individual offices from her. Because a personal relationship between the two of them had ended badly some time before, there was some ongoing tension between Patterson and appellant.

{¶ 7} Patterson testified that she considered the reception area to be common space to which both would have access but that she had no right to access appellant's private office nor he to access hers. On June 22, 2016, Patterson had a security company install a surveillance camera in her private office and another in the common area. She stated she did so because appellant had accused her of infringing on his office space and possessions, and Patterson wanted to be able to refute any future allegations of this sort. In connection with this testimony, the prosecution presented as an exhibit an invoice from Lincoln Technology, which installed the camera equipment at a total price of $586.35, including $300 for the two cameras.

{¶ 8} On June 24, 2016, two days after installing the security cameras, Patterson noted that some filing cabinets in the common area had been moved and replaced with a couch owned by appellant. A note on the couch said "I dare anyone to touch my stuff again." (Tr. at 101.) On this occasion, Patterson also noticed that the camera in the common area had been blinded by turning it toward the wall. Patterson turned the camera back to cover the common office and commenced to take pictures of the situation. As she did so, appellant came out of his office, brushed past her, stepped up on his couch,

and pulled the security camera from the ceiling.  He threw it to the floor in her private office, where it shattered.

{¶ 9}  After the situation calmed down, Patterson called Lincoln Technology, which was unable to reinstall the camera because of damage to the wires.

{¶ 10} Jenifer Rutherford testified for the prosecution as an eyewitness to the confrontation.  She was friendly with Patterson and also knew appellant, who had introduced them.  Rutherford and her nephew were helping Patterson move some boxes on the day in question.  Rutherford confirmed that initially the camera was pointed toward the wall, and Patterson attempted to move it.  Appellant then came out of his office, yanked the camera from the wall, and threw it on the floor where it broke into pieces.

{¶ 11} Officer Kevin Smith of the Columbus Division of Police testified that on June 24, 2016, he was on routine patrol and responded to a reported disturbance at 750 East Long Street in Columbus.  He intervened in a dispute between a landlord, whom he identified as Patterson, and her tenant, whom he identified as appellant.  When Smith spoke with appellant at the scene, appellant stated that he had taken the camera out of the ceiling and put it on a desk without breaking it.  Smith did observe the camera lying on the floor in pieces at the scene.

{¶ 12} Appellant testified in his own defense.  He confirmed that the office consisted of two private offices and a common area.  He felt that Patterson had no right under the lease to install a camera in the common area.  As an exhibit, appellant introduced a copy of the lease between himself and Patterson's company, providing for quiet enjoyment of the premises by the tenant without encumbrance or hindrance from the landlord.  Appellant testified that he reoriented the camera against the wall to preserve the security and confidentiality of his own office and deemed it an invasion of his right of privacy as a tenant when she again pointed it at his office door.

{¶ 13} On cross-examination, appellant admitted that the lease did not expressly prohibit Patterson from installing the camera in the common area.  He also admitted that the lease did not give him the right to tamper with or disturb Patterson's property or remove the camera.  He admitted to moving the camera so that it faced toward the wall.  He stated that after removing the camera from its mounting without causing any

breakage, he attempted to hand it to Patterson, who backed up and would not take it. Because appellant was not allowed in Patterson's office, he tossed the camera into her office and walked back into his own. When he did so, the camera came apart in two pieces. When a technician came to reinstall the camera, appellant told him not to do so, and appellant stated that if the technician had reinstalled the camera, appellant would have again removed it.

{¶ 14} The state submitted as an exhibit video recordings from the two cameras, including the one in the common area and the one in Patterson's office. The video from the camera in the common area shows Patterson adjusting the camera so that it scans the common area, rather than facing the wall. Appellant is seen walking by Patterson toward the camera. When he reaches the camera, it ceases recording.

{¶ 15} The video from the camera in Patterson's private office shows Rutherford and her nephew sitting inside the office with the door to the common area open. An object is seen being thrown into the office and splitting into two pieces when it hits the floor. A still shot from the video shows Patterson pointing at the camera parts on her office floor while a police officer stands in the background.

{¶ 16} After closing arguments, the trial court provided the following jury instruction as the jury took the case:

> As to the charge of criminal mischief, you may consider all of the evidence before you, including the lease agreement between [appellant] and Buffie Patterson. If you determine, after your review of the evidence, that Buffie Patterson had no legal right to install the camera in question in the location it was placed, and only if you determine that this prohibition existed in the lease, you may consider whether [appellant] has a defense to the charge of criminal mischief and only the charge of criminal mischief.

(Tr. at 253.)

{¶ 17} Appellant presents two arguments to establish the insufficiency of the evidence at trial. He first argues that a mistake of fact negates the mens rea necessary to support conviction for the crime of criminal mischief. In the alternative, he argues that his action in destroying the camera was self-help to abate a nuisance and therefore privileged.

{¶ 18} R.C. 2909.07(A) defines the offense of criminal mischief:

No person shall:

(1) Without privilege to do so, knowingly move, deface, damage, destroy, or otherwise improperly tamper with * * * the following:

(a) The property of another.

{¶ 19} Appellant first argues that a mistake of fact negates the element of "knowingly" and prevents conviction on the offense. Appellant argues that he believed that he had a right under the lease to remove the intrusive camera. Appellant does not argue on appeal that the evidence was lacking regarding the other elements of the offense.

{¶ 20} R.C. 2901.22(B) states that "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." With respect to the required mental state of "knowingly," mistake of fact is an affirmative defense. *State v. Cooper*, 10th Dist. No. 09AP-511, 2009-Ohio-6275, ¶ 9. " '[T]he due process "sufficient evidence" guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime.' " *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 37, quoting *Caldwell v. Russell*, 181 F.3d 721, 740 (6th Cir.1999). We can therefore address the mistake-of-fact defense only in the context of the manifest weight standard under appellant's second assignment of error.

{¶ 21} Appellant then argues that his actions were not "without privilege" under R.C. 2909.07(A)(1) because he had the right to exercise self-help in abating the nuisance constituted by the cameras. Appellant presents no authority for the proposition that Ohio recognizes abatement of a nuisance as a defense to criminal mischief, and one Ohio court has rejected the defense in a burglary case: " 'Self-help' replevin is not an affirmative defense to burglary." *State v. Sims*, 8th Dist. No. 54278 (Nov. 3, 1988). If we look to foreign cases for guidance, at least one state specifically rejects this concept, the defense in a crime similar to the one before us. *Barstow v. State*, Texas Crim.App. No. 03-10-00142-CR, 2011 Tex.App. LEXIS 3236 (Apr. 27, 2011) ("[T]o the extent that Barstow is arguing

that he had a right under 'the common law' to 'abate the nuisance' * * *, this argument is without merit.  Even if we were to assume * * * a nuisance as that term is defined, abating a nuisance is not recognized in the penal code as a defense to criminal mischief.  Thus, it is not a valid defense to the commission of the offense.").  Others seem to contemplate it with reservations, such as prior notice or warning before undertaking self-help.  *See generally United States v. Heathershaw*, 81 F.3d 765 (1996) (reviewing conflicting state law regarding self-help replevin as a defense to theft).

{¶ 22} Even accepting, arguendo, that Ohio recognizes such a privilege in connection with the mens rea of criminal mischief, we find that the state presented sufficient evidence on the mens rea element of the crime.  The existence of a "knowing" state of mind as an element of a criminal offense "is to be determined from all the attendant facts and circumstances available."  *State v. Teamer*, 82 Ohio St.3d 490, 492 (1998).  The jury could conclude from the language of the lease and the testimony regarding the cameras in the common office area that these simply did not establish a nuisance redressable through self-help.  Under a sufficiency standard, therefore, the evidence, if believed, could support the requisite mens rea.  For the foregoing reasons, we overrule appellant's first assignment of error.

## B.  Second Assignment of Error

{¶ 23} We now turn to appellant's second assignment of error.  In contrast to our review of sufficiency-of-the-evidence issues, when presented with a manifest-weight challenge, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).  "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.  It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them.

Weight is not a question of mathematics, but depends on its *effect in inducing belief*.' " (Emphasis sic.) *Thompkins* at 387, quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

{¶ 24} As the finder of fact, the jury is in the best position to weigh the credibility of testimony by assessing the demeanor of the witnesses and the manner in which they testify, the witnesses' connection or relationship with the parties, and their interest, if any, in the outcome. The jury can accept all, a part, or none of the testimony offered by a witness, whether it is expert opinion or eyewitness fact, whether it is merely evidential or tends to prove the ultimate fact. *State v. McGowan*, 10th Dist. No. 08AP-55, 2008-Ohio-5894, ¶ 13, quoting *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 25} When engaged in this limited reweighing, the appellate court may not merely substitute its view for that of the trier of fact, and in criminal cases should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *Martin* at 175.

{¶ 26} Again, appellant only addresses the mental state required for the offense and does not dispute the weight of the evidence regarding the other elements of the offense for which he was convicted. Nor can our sua sponte review of the record disclose any such deficiency. The state presented sufficient evidence as to each element of the offense: Patterson testified that she owned the camera, that it was installed in the common area of the office, and that appellant removed and damaged the camera without her permission. Rutherford testified in support of these essential facts. Appellant's own testimony contradicted little except the degree of damage to the camera. Although appellant contests whether the camera was broken, he does not otherwise dispute the circumstances under which he removed the camera from the ceiling, nor that the camera did not belong to him and in fact belonged to Patterson. Because there is conflicting evidence on whether the camera was damaged in the process, the jury was free to believe Patterson's account that the camera was shattered and could not be repaired and disbelieve appellant's testimony that it was not in fact damaged.

{¶ 27} We thus consider only the mens rea element under appellant's proposed mistake-of-fact defense. Mistake of fact may negate a showing of mens rea where there is

a requirement that the defendant acted "knowingly." *State v. Snowden*, 7 Ohio App.3d 358, 363 (10th Dist.1982); *State v. Jordan*, 2d Dist. No. 17686 (July 30, 1999). Here, however, appellant does not dispute the essential conduct giving rise to the offense, nor the context in which it occurred but, instead, asserts that he had the right to so act and subjectively believed that his actions were legal. *See generally State v. Johnson*, 12th Dist. No. CA97-07-006 (Jan. 5, 1998). As such, appellant's arguments actually assert a mistake of law rather than a mistake of fact. The case is distinguishable from the situation in *Snowden*, in which the defendant had reasonable grounds to believe that factual circumstances supported his actions. Mistake of law is not a defense in Ohio. *State v. Pinkney*, 36 Ohio St.3d 190, 198 (1988). We therefore overrule appellant's second assignment of error.

## III.  CONCLUSION

{¶ 28} Based on the foregoing, we find that appellant's conviction is supported both by the manifest weight of the evidence and sufficient evidence to support conviction as a matter of law. We overrule appellant's two assignments of error and affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

BROWN and BRUNNER, JJ., concur.

_____