OPINION
{¶ 1} Defendant-appellant, Douglas A. Puckett ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas, which found appellant guilty of domestic violence, in violation of R.C. 2919.25. For the following reasons, we affirm.
 {¶ 2} Appellant was indicted on one count of domestic violence against his wife, Alonda Puckett. Appellant waived his right to a jury trial, and the case was tried to the trial court. At the outset of the trial, the parties stipulated that appellant had been convicted of aggravated menacing against Mrs. Puckett in 1994, and of domestic violence against Mrs. Puckett in 2003.
 {¶ 3} Plaintiff-appellee, the State of Ohio ("appellee"), called Mrs. Puckett as a witness. She testified that there was an altercation between her and appellant on August 13, 2005. She stated that they were arguing because appellant had accused her of having an affair. She testified to the following:
A. He had asked me where the hammer was that was at the door and I went outside, came back in with it. I was angry. I took the hammer and I said here's your hammer and that's what happened.
Q. And you made a motion with your right hand, like put it up to your shoulder?
A. Yeah. Like this.
Q. And put the hammer down. He took the hammer from you?
A. He started to grab it and then I wouldn't let him have it.
Q. What happened after that?
A. I kept holding it and he had ahold of it and we kind of fought with it back and forth.
Q. What happened to the hammer at the end?
A. I don't remember.
Q. Did you get injured at all?
A. Yes.
(Tr. at 11-12.)
 {¶ 4} Her injuries, as indicated through Mrs. Puckett's testimony and photographs submitted as exhibits, consisted of bruising, redness, and a scrape on her legs. She also testified, however, that at least one of the bruises shown in the photographs was the result of an injury at work. And, upon questioning from the court, Mrs. Puckett indicated that she had been hit in the head during the altercation, but that it did not hurt her.
 {¶ 5} Mrs. Puckett stated that the altercation between her and appellant occurred at about 2:00 a.m., and she and appellant went to bed together afterwards. Later, she told her mother what happened, and Mrs. Puckett's mother called the police later that morning. Although she told the police that appellant had hit her with the hammer, she testified that appellant did not hit her with the hammer. The transcript reflects the following:
Q. Did you ever tell anyone he hit you with a hammer?
* * *
A. Yes.
Q. Who did you tell?
A. The police.
Q. Why?
A. Because that's what I remembered happened. That's the way I felt.
Q. But now you don't remember it that way?
A. No.
Q. What's changed your memory?
A. I don't know. I mean, I've been trying to think of what happened and I was drinking that night and I don't recall each and every thing that happened.
(Tr. at 27-28.)
 {¶ 6} Upon cross-examination, Mrs. Puckett testified that appellant could have perceived her gesture with the hammer as a threat "[b]ecause of the way [she] came at him with it." (Tr. at 30.) She further testified that she could not be certain that appellant caused the injuries depicted in the photographs.
 {¶ 7} Mrs. Puckett also testified that she was on medication at the time and that the medication adversely affected her mood. She also stated that she had made an unprovoked attack against appellant in the past, the police were called, and appellant pled to a charge of committing domestic violence against her. On the night in question, Mrs. Puckett testified that she made the first physical move by picking up the hammer and holding it in a threatening manner.
 {¶ 8} Also on cross-examination, Mrs. Puckett identified a letter she had written to appellant while he was in jail. The letter stated, in part:
* * * I can honestly say you are not totally to blame. When you asked me for the hammer I should not have been so aggressive when I handed it to you. You probably thought I was going to hit you with it or something because of previous incidents. * * *
* * * I'm not going to testify against you.
 {¶ 9} Upon questioning from the court, Mrs. Puckett testified that she is five feet, one inch, tall and weighs 125 pounds. She stated that she does not remember telling medics that she had been choked.
 {¶ 10} Appellant presented no testimony or witnesses on his behalf. During closing arguments, appellant's counsel raised the affirmative defense of self-defense. Counsel argued that Mrs. Puckett had created the situation, stating: "It probably wouldn't have escalated into a fight if she had not put that hammer into an aggressive position and then repicked it up again when it could have been left in the resting position." (Tr. at 50.)
 {¶ 11} Following conclusion of the case and an extensive discussion of Mrs. Puckett's testimony, her letter to appellant, and the photographic evidence, the court found appellant guilty.
 {¶ 12} Appellant filed a motion for reconsideration of judgment, in which he asked the court to reconsider its verdict. Appellant essentially argued that Mrs. Puckett gave credible testimony, which showed that she was the aggressor, and that appellee had failed to submit sufficient evidence of the alleged crime. The court thereafter issued its final judgment entry, by which it found appellant guilty.
 {¶ 13} Appellant filed a timely appeal and raises the following assignments of error:
ASSIGNMENT OF ERROR NO. I
THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR RECONSIDERATION OF JUDGMENT AND FINDING THE DEFENDANT GUILTY ON THE EVIDENCE PRESENTED.
ASSIGNMENT OF ERROR NO. 2
THE TRIAL COURT ERRED IN NOT FINDING BY A PREPONDERANCE OF THE EVIDENCE THAT THE DEFENDANT HAD ACTED IN SELF-DEFENSE.
 {¶ 14} By his first assignment of error, appellant argues that the evidence against him was insufficient to find him guilty beyond a reasonable doubt. Specifically, appellant argues that Mrs. Puckett's repeated denials that appellant caused her injuries could only have created doubt as to appellant's guilt; without contrary evidence from appellee, appellant argues, the evidence was insufficient to convict him. We disagree.
 {¶ 15} Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict. State v. Thompkins (1997),78 Ohio St.3d 380, 386. We examine the evidence in the light most favorable to the state and conclude whether any rational trier of fact could have found that the state proved beyond a reasonable doubt the essential elements of the crime. State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus; Statev. Yarbrough, 95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 78. We will not disturb the verdict unless we determine that reasonable minds could not arrive at the conclusion reached by the trier of fact. Jenks at 273. In determining whether a conviction is based on sufficient evidence, we do not assess whether the evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. SeeJenks, paragraph two of the syllabus; Yarbrough at ¶ 79 (noting that courts do not evaluate witness credibility when reviewing a sufficiency of the evidence claim); State v.Lockhart (Aug. 7, 2001), Franklin App. No. 00AP-1138.
 {¶ 16} Here, the trial court convicted appellant on a charge of domestic violence, in violation of R.C. 2919.25. R.C.2919.25(A) provides: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." For purposes of that provision, a person acts "knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).
 {¶ 17} Appellant argues that there was no evidence indicating that he knowingly caused injury. Instead, appellant argues, the only evidence before the court, i.e., Mrs. Puckett's testimony and letter, indicates that appellant did not cause her injuries.
 {¶ 18} We find, however, that a portion of Mrs. Puckett's testimony does support appellant's conviction. While Mrs. Puckett testified at trial that appellant did not hit her with the hammer or cause her injuries and that she was the aggressor, she also testified that she told police that appellant hit her and caused her injuries. "[I]n domestic violence cases, it is not uncommon for the complaining witness to change her story before trial."State v. Brown (May 8, 1998), Allen App. No. 1-97-74. Here, Mrs. Puckett's original version of what happened — the version the trial court believed — supports appellant's conviction.
 {¶ 19} In addition, as the trial court noted in its extensive discussion of the evidence, Mrs. Puckett's original version of the altercation was consistent with the only physical evidence available, the photographs. While the photographs depict minor injuries, they support a finding that a physical struggle occurred and that it caused physical harm. As the court concluded, appellant "is not a huge person," but he is "considerably taller, heavier and stronger" than Mrs. Puckett. (Tr. at 53.) Thus, a struggle between Mrs. Puckett and appellant could "resolve itself against Mrs. Puckett in a very short period of time." (Tr. at 53.)
 {¶ 20} Appellant directs us to Mrs. Puckett's contrary testimony and her letter to appellant, which professes at least partial blame for the incident. As noted, for purposes of determining whether a conviction is based on sufficient evidence, we do not evaluate witness credibility. Thus, for these purposes, we do not consider whether Mrs. Puckett's more current description of the incident is more or less credible than what she told police. Rather, we only consider whether the evidence against appellant, if believed, supports his conviction.
 {¶ 21} Under R.C. 2919.25(A), a person may not "knowingly cause or attempt to cause physical harm" to a family member. Here, if believed, the evidence against appellant showed that he came home angry, accused his wife of having an affair, asked for the hammer, struggled with his wife over the hammer, struck her with the hammer, and caused injuries. Thus, viewing this evidence in the light most favorable to the state, we conclude that a rational trier of fact could have found that the state proved beyond a reasonable doubt that appellant knowingly caused or attempted to cause physical harm to a family member. Therefore, we overrule appellant's first assignment of error.
 {¶ 22} In his second assignment of error, appellant asserts that the trial court erred by failing to find that he acted in self-defense. Self-defense is an affirmative defense within the meaning of R.C. 2901.05(C)(2). Therefore, a defendant has the burden of proving self-defense by a preponderance of the evidence. To establish self-defense, the accused must prove: (1) the accused was not at fault in creating the situation giving rise to the altercation; (2) the accused had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from that danger was in the use of such force; and (3) the accused must not have violated any duty to retreat or avoid the danger. State v. Robbins (1979), 58 Ohio St.2d 74, paragraph two of the syllabus. The degree of force permitted depends upon what is reasonably necessary to protect that individual from the imminent use of unlawful force. Akronv. Dokes (1986), 31 Ohio App.3d 24, 25, cited in State v.White, Franklin App. No. 05AP-1178, 2006-Ohio-4226.
 {¶ 23} Here, appellant did not testify and, therefore, gave no testimony regarding his account of the situation, his belief that he was in imminent danger or his belief that the use of force was his only means to escape that danger. Rather, appellant's counsel argued self-defense in closing argument as follows, in pertinent part:
Your Honor, we think that the defense has established that [appellant] had reasonable grounds to believe that he was in danger of bodily harm and that he grabbed that hammer at first to defend himself and that he held on to it to defend himself from the possibility of attack.
Since he never gained control of it, according to the victim's testimony, he really couldn't have had the opportunity to use the hammer to attack her. If you look at the State's exhibits what Mrs. Puckett told the police is that he hit her with the hammer. And that isn't what happened.
(Tr. at 50-51.)
 {¶ 24} We find, however, that the trial court properly rejected appellant's argument. Appellant did not prove that he was not at fault in creating the situation giving rise to the altercation. Mrs. Puckett testified that appellant came home at 2:00 a.m., was angry with her, yelled at her, accused her of having an affair, and asked for the hammer.
 {¶ 25} Nor did appellant prove that he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from that danger was the use of force. Self-defense incorporates a "subjective test in determining whether a particular defendant properly acted in self-defense. The defendant's state of mind is crucial to this defense." State v. Koss (1990), 49 Ohio St.3d 213, 215. Here, while Mrs. Puckett testified that appellant could have felt threatened by her actions, the court considered the difference in size between appellant and Mrs. Puckett, a difference suggesting to the court that Mrs. Puckett could not have overcome appellant easily. And, whatever belief appellant might have held regarding the danger from Mrs. Puckett's use of the hammer, there was no evidence that appellant's only means of escape from Mrs. Puckett was in the use of force. Therefore, the trial court properly found that appellant did not prove self-defense by a preponderance of the evidence, and we overrule appellant's second assignment of error.
 {¶ 26} In conclusion, we overrule appellant's first and second assignments of error. Accordingly, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Brown and Sadler, JJ., concur.