OPINION
{¶ 1} Defendant-appellant, Elvis N. McGowan, Jr., appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of domestic violence in violation of R.C. 2919.25, a third-degree felony. Because (1) sufficient evidence supports elevating defendant's conviction for domestic violence to a third-degree felony, and (2) defendant's conviction is not against the manifest weight of the evidence, we affirm. *Page 2 
 {¶ 2} By indictment filed on July 6, 2007, defendant was charged with two counts of rape in violation of R.C. 2907.02, one count of kidnapping in violation of R.C. 2905.01, and one count of domestic violence in violation of R.C. 2919.25. The indictment alleged defendant previously was convicted of domestic violence on August 28, 2002 and of menacing on January 22, 2002.
 {¶ 3} Representing himself, defendant waived a jury trial on the domestic violence count and tried the remaining counts to a jury beginning November 13, 2007. At the conclusion of the trial, the jury rendered not guilty verdicts on both counts of rape and the single count of kidnapping. The trial court found defendant guilty of domestic violence as a third-degree felony and sentenced him to four years of incarceration with three years of mandatory post-release control. The trial court journalized its action in a judgment entry filed November 30, 2007. Defendant timely appeals, assigning the following errors:
 First Assignment of Error
 Appellant's conviction for domestic violence as a third-degree felony is not supported by sufficient evidence.
 Second Assignment of Error
 Appellant's conviction is against the manifest weight of the evidence, because Appellant established the affirmative defense of self-defense by a preponderance of the evidence.
I. First Assignment of Error {¶ 4} Defendant's first assignment of error contends the record contains insufficient evidence to support his conviction for domestic violence as a third-degree felony. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v.Thompkins (1997), 78 Ohio St.3d 380, 386. Sufficiency is a test of adequacy. Id. *Page 3 
We construe the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus;State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387.
 {¶ 5} Pursuant to R.C. 2919.25(A), "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Under the provisions of R.C. 2919.25(D)(2), domestic violence ordinarily is a first-degree misdemeanor. It may, however, be elevated to a felony due to past convictions. R.C. 2919.25(D)(3) provides that "if the offender previously has pleaded guilty to or been convicted of domestic violence * * * or any offence of violence if the victim of the offense was a family or household member at the time of the commission of the offense, a violation of division (A) or (B) of this section is a felony of the fourth degree * * *." Pursuant to R.C. 2919.25(D)(4), the offense of domestic violence may be elevated to a higher degree of felony if the offender pleaded guilty to or was convicted of two or more such offenses. Because defendant was convicted of domestic violence as a third-degree felony, the state was required to prove, as pertinent here, that he had two prior convictions for domestic violence or an offense of violence committed against a family or household member.
 {¶ 6} Neither party disputes the sufficiency of the state's evidence regarding one of the prior convictions. As a result of an incident arising on or about May 27, 2002, defendant was charged with one count of domestic violence and one count of aggravated menacing. Through a judgment entry filed on August 28, 2002, the aggravated menacing charge was dismissed and defendant was convicted of domestic violence pursuant to a *Page 4 
no contest plea on which the trial court found defendant guilty and sentenced him to 30 days suspended for time served.
 {¶ 7} The dispute centers on two complaints that arose out of a December 9, 2001 incident, both included in State's Exhibit B along with the judgment entry resolving the charges. The first complaint charged defendant with domestic violence, stating that on or about December 9, defendant "did: by threat of force, knowingly cause Floyd L. McGowan, a family member to believe that the offender will cause physical harm to Floyd L. McGowan the offender's brother by means of stating `I'll whoop your ass when the police leave.'" The second complaint charged defendant with menacing, stating that on or about December 9, defendant "did: knowingly cause another to wit: Floyd L. McGowan to believe that he Elvis N. McGowan, Jr. would cause physical harm to the said other person to wit[:] the offender stated `I'll whoop your ass when the police leave.'" According to State's Exhibit B, defendant was found guilty of the menacing charge, and the trial court sentenced him accordingly.
 {¶ 8} Because R.C. 2919.25(D)(3) includes not only domestic violence as an offense that will elevate a misdemeanor charge for domestic violence to a felony, but also "any offense of violence if the victim of the offense was a family or household member at the time of the commission of the offense," the issue is whether menacing is an offense of violence. R.C. 2901.01(A)(9)(a) resolves the issue, stating menacing, a violation of R.C. 2903.22, is an offense of violence. As a result, defendant's conviction for menacing against a family member is sufficient evidence, coupled with his domestic violence conviction in 2002, to elevate the misdemeanor domestic violence charge to a felony of the third degree. *Page 5 
 {¶ 9} While defendant does not dispute that a menacing conviction may so serve, defendant contends the state failed to prove defendant's menacing conviction involved a family member. Contrary to defendant's contentions, the state's evidence is sufficient.
 {¶ 10} State's Exhibit B was admitted in its entirety in the trial court without objection. The domestic violence complaint identifies the victim as defendant's brother. The same person is referenced in the aggravated menacing complaint, the same date of the incident is noted, and the same words that serve as the premise for the domestic violence charge also serve as the basis for the aggravated menacing charge. Although the evidence arguably is hearsay that could not be admitted for its truth, defendant did not object to its admission. As a result, State's Exhibit B allows the trier of fact to reasonably conclude that one incident occurred, defendant's brother was the victim, and defendant threatened him by saying he would "whoop your ass when the police leave." In view of defendant's failure to object, we cannot conclude otherwise on the evidence that so plainly identifies Floyd McGowan as defendant's brother. Accordingly, the evidence, construed in the state's favor, supports the trial court's conclusion that defendant was convicted of menacing where defendant's brother was the victim.
 {¶ 11} Because the state presented sufficient evidence to support the allegation in the indictment that defendant had two prior qualifying offenses elevating his domestic violence charge to a third-degree felony, we overrule defendant's first assignment of error. *Page 6 
II. Second Assignment of Error {¶ 12} Defendant's second assignment of error contends his conviction is against the manifest weight of the evidence because defendant established an affirmative defense, self-defense, by a preponderance of the evidence.
 {¶ 13} When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict to permit reasonable minds to find guilt beyond a reasonable doubt.Conley, supra; Thompkins, at 387 (noting that "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony"). Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The jury thus may take note of the inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony."State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill (1964), 176 Ohio St. 61, 67.
 {¶ 14} According to the state's evidence, on June 26, 2007, A.B. (the "victim") was living with defendant at 1435 N. Fourth Street in Franklin County with her one-year-old son. Defendant and the victim had lived together for approximately one year and been engaged for approximately nine months at the time of the incident.
 {¶ 15} On June 26, the victim woke up and asked to visit her cousin, Sandy Williams. Because he did not get along with the victim's cousin, defendant refused. An argument ensued; although defendant began to shower, the argument continued. When *Page 7 
the victim did not heed defendant's instructions to lower her voice, defendant responded by hitting her three times in the face in front of her son. The two then went separate ways: defendant went to an ex-girlfriend's home, and the victim went to her cousin's home. When they parted, she told him the relationship was over; he advised her not to touch any of his clothes.
 {¶ 16} According to the victim, she returned to her apartment four or five hours later, and no one was home. She put her son down for a nap and then watched a movie upstairs in her bedroom. Defendant came home about 15 minutes into the movie and knocked at the back door. She unlocked it, and he entered the house. She already had packed his clothes and put them in the downstairs closet. As she headed upstairs, he stopped her by asking if it was over, to which she replied yes. She then went upstairs to finish watching the movie.
 {¶ 17} The victim testified that about five to seven minutes later defendant came upstairs and asked for his belt, a black belt with metal holes. When she told him it was in the downstairs closet, he asked her to get it, and she did. She gave it to him and, as she continued to watch the movie, he stood over her, wrapping the belt around his hand. She said, "[Y]ou're not about to do what I think you're about to do." (Tr. 61.) He said nothing. Defendant then started questioning her, asking her why she was telling people about their business. She "told him we didn't have no more business to share. And he just started beating me with the belt." Id. When she stood up, he shoved her into a corner, blocked her leaving, and kept hitting her. He continued to ask questions, hitting her body and face; when she squatted down in the corner, he struck her head and back. *Page 8 
 {¶ 18} According to the victim, defendant told her he called the police, stating "that he had told the police what he was about to do to me and what was I going to say when the police came." (Tr. 64-65.) He then asked her what she was going to say. When she did not answer, he hit her with the belt, stating he should not have to tell her everything. He told her to tell the police "[t]hat we had got into a fight and I didn't want him there no longer." (Tr. 65-66.)
 {¶ 19} The victim testified defendant continued to hit her and forced her to take off her clothes. Although at first she did not, he kept hitting her, so she acquiesced. He then told her to "wash him up." (Tr. 67.) She did not initially know what he meant, but she went to put soap on a rag. When she returned, defendant was disrobed from the waist down and wanted her to perform oral sex. After she complied, he instructed her to lie on the bed, and he engaged in anal intercourse. While he was lying on her, he asked if they would still be together. She told him no, as it was time for them to move on with their lives. He then jumped up and got into the shower. When he did so, she grabbed her son and went to her cousin's house, where the police were called.
 {¶ 20} Detective Jason Sprague interviewed defendant later that evening. While defendant contended he and the victim engaged in consensual sex, he admitted he hit her. Defendant told Sprague, "I smacked her. I smacked her pretty hard. It wasn't as hard as she hit me, but she did hit me first. That was the main thing. And I smacked her * * * hitting her in the face with something wrapped on my hand." (Tr. 143-144.) He later stated "I smacked her up a few good times for sure." (Tr. 150.) Admitting he hit her harder than she hit him, defendant told police he "smacked the dog shit out of her." (Tr. 189.) As *Page 9 
defendant described it, he hit her "really hard" and she, as a result, took "a couple of steps back." (Tr. 192.)
 {¶ 21} Defendant testified on his own behalf and, in contrast to the state's evidence, contended his argument with the victim began the night before, causing him to pack some of his clothes that evening. The next day, he and the victim awoke around noon, and the victim mentioned wanting to go to her cousin's residence. Defendant testified to a prior incident involving the victim's cousin that arose out of a misunderstanding about a missed interview and resulted in the victim's cousin cursing defendant. Given those circumstances, defendant told the victim she was being stupid for wanting to go to her cousin's residence.
 {¶ 22} According to defendant, he then got dressed and went to his ex-girlfriend's house. After being there for "a little bit," he returned to the victim's residence. (Tr. 223.) Because he was without keys, he approached the back door and knocked. The victim was walking up to the apartment at the same time. The two entered the house, talked for a while and "sort of" apologized to each other for the comments they had made. (Tr. 224.) Defendant testified that everything seemed fine, and he left for a while to check with his ex-girlfriend about money he requested from her. While he was out, he learned the victim was telling others that he and she were separated. He returned home and confronted the victim about the situation, and they argued. He attempted to leave, but she, standing in front of the bedroom door, asked him whether he was having sex with his ex-girlfriend. He explained he simply was upset that the victim was telling people things about them.
 {¶ 23} Defendant stated the victim then "swung at me in my face area. I kind of moved. She hit me in my shoulder. I smacked her in her face." (Tr. 225.) Apparently *Page 10 
referring to his interview with Sprague, defendant testified he "already admitted that [he] probably shouldn't have smacked her as hard as [he] did smack her, considering that she never really landed a solid blow, but [he] did smack her." Id. According to defendant, the victim throughout the struggle put "her head down and was just swinging wildly. She never really hit me with any of the blows, because she couldn't see me." Id.
 {¶ 24} Defendant testified that, as a result of the struggling, they both ended up on one side of the room, and defendant tried to calm the victim. Although the altercation was not physical, it was emotional. They continued to talk, which led to the victim's performing oral sex on defendant and his engaging in anal intercourse with her. Defendant stated the victim never asked him to stop and the sexual conduct was consensual. Instead, defendant testified, he stopped the sexual conduct when the victim stated they should break up because he was too old for her.
 {¶ 25} Later that evening, defendant saw law enforcement and approached them. He let them know who he was, and they informed him the victim said defendant beat her, kicked her in the face, kicked her in the stomach, and pulled her by her hair. They basically told him she reported that defendant assaulted her. Defendant concluded his testimony by stating that he did not feel he abused the victim in any way, "although I did admit to smacking her." (Tr. 235.)
 {¶ 26} Because the victim used non-deadly force against defendant, his defense of self-defense required that he prove (1) he was not at fault in creating the situation that gave rise to the affray, and (2) he had both reasonable grounds to believe and an honest belief, even if mistaken, that he was in imminent danger of bodily harm, and (3) the only means available to protect himself was the use of force not likely to cause death or great *Page 11 
bodily harm. In re D.H., 169 Ohio App.3d 798, 2006-Ohio-6953, at ¶ 30, citing State v. Hansen, Athens App. No. 01CA15, 2002-Ohio-6135, at ¶ 24. As this court explained in State v. Puckett, Franklin App. No. 06AP-330, 2006-Ohio-5696, at ¶ 22 "the degree of force permitted depends upon what is reasonably necessary to protect that individual from the imminent use of unlawful force." See, also, Akron v. Dokes (1986),31 Ohio App.3d 24, 25; Chillicothe v. Knight (1992), 75 Ohio App.3d 544,550 (stating that "[t]o establish self-defense in a nondeadly-force case, one may use such force as the circumstances require in order to defend against danger which one has good reason to apprehend");State v. Fox (1987), 36 Ohio App.3d 78.
 {¶ 27} On the facts here, the trial court's judgment is not against the manifest weight of the evidence. If the trial court believed the victim, defendant initiated the physical confrontation and hit her repeatedly with a belt even though she did not return the blows. In those circumstances, self-defense does not apply. Defendant, however, asserts the trial court could not reasonably believe defendant beat the victim with his belt, as Officer Darren Egelhoff, who testified for defendant, stated he noticed no serious injuries to the victim. Even if the trial court believed Egelhoff's testimony, the trial court seriously could question whether defendant had both reasonable grounds to believe and an honest belief that he was in imminent danger of bodily harm at the hands of the victim. Indeed, defendant testified to the victim's "swinging wildly" but never really hitting defendant "because she couldn't see" him. (Tr. 225.)
 {¶ 28} Lastly, the evidence also allowed the trial court to conclude defendant used more force than reasonably necessary. Defendant admitted to law enforcement that he hit the victim harder than she hit him, smacking "the dog shit out of her" and conceded he *Page 12 
probably should not have smacked her as hard as he did in view of her never landing a solid blow. (Tr. 189.) As defendant put it, the victim "didn't really hit [him] that hard and [he] went overboard." (Tr. 237.)
 {¶ 29} As a result, whether the trial court found either the victim or defendant to be more credible, the record supports the trial court's judgment. Accordingly, the trial court's judgment is not against the manifest weight of the evidence. Defendant's second assignment of error is overruled.
 {¶ 30} Having overruled defendant's two assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
FRENCH and GREY, JJ., concur.
GREY, J., retired of the Fourth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 1