[Cite as *State v. Hamilton*, 2014-Ohio-5562.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | **No. 14AP-291** |
| v. | : | (C.P.C. No. 13CR-2940) |
| De'Angelo R. Hamilton, | : | **(REGULAR CALENDAR)** |
| Defendant-Appellant. | : | |

## D E C I S I O N

**Rendered on December 18, 2014**

*Ron O'Brien*, Prosecuting Attorney, and *Michael P. Walton*, for appellee.

*Barnhart Law Office LLC*, and *Robert B. Barnhart*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

SADLER, P.J.

{¶ 1} Defendant-appellant, De'Angelo R. Hamilton, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to jury verdicts finding him guilty of one count of aggravated robbery, one count of robbery, and one count of kidnapping.

{¶ 2} All charges against appellant arose out of the robbery committed by two men against Bradley Nguyen in Franklin County, Ohio on the night of May 15 and early morning hours of May 16, 2013. The Franklin County Grand Jury indicted appellant on one count of aggravated robbery, two counts of robbery, one count of kidnapping, and one count of having a weapon under disability. All counts carried a firearm specification and

the first three carried a repeat violent offender specification. Before trial, the state dismissed one of the robbery counts as duplicative, and appellant waived jury trial on the weapon under disability charge. The jury convicted appellant of the three principal counts but acquitted him of the associated firearm specifications. The court then acquitted appellant of the weapon under disability charge and repeat violent offender specifications. The court merged the three offenses for sentencing as allied offenses committed with a common animus. The state elected sentencing on the aggravated robbery conviction, for which the court imposed a term of nine years.

## I. ASSIGNMENTS OF ERROR

{¶ 3}  Appellant has timely appealed and brings the following two assignments of error for our review:

> [I.] APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> [II.] THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT ENTERED A CONVICTION FOR BOTH AGGRAVATED ROBBERY AND ROBBERY EVEN THOUGH IT MERGED THEM FOR THE PURPOSES OF SENTENCING.

### A. First Assignment of Error

{¶ 4}  Appellant's first assignment of error asserts that his convictions are against the manifest weight of the evidence. When presented with a manifest-weight challenge, an appellate court may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a

question of mathematics, but depends on its effect in inducing belief.' " (Emphasis omitted.) *Id.*, quoting Black's Law Dictionary 1594 (6th Ed.1990).

{¶ 5} As the finder of fact, the jury is in the best position to weigh the credibility of testimony by assessing the demeanor of the witness and the manner in which he testifies, his connection or relationship with the parties, and his interest, if any, in the outcome. The jury can accept all, a part or none of the testimony offered by a witness, whether it is expert opinion or eyewitness fact, whether it is merely evidential or tends to prove the ultimate fact. *State v. McGowan*, 10th Dist. No. 08AP-55, 2008-Ohio-5894, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 6} When a court of appeals addresses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. *Thompkins* at 387. A defendant is not entitled to a reversal on manifest-weight grounds merely because inconsistent evidence was offered at trial. *State v. Campbell*, 10th Dist. No. 07AP-1001, 2008-Ohio-4831. " '[W]hile the [factfinder] may take note of the inconsistencies and resolve or discount them accordingly, * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence.' " *State v. Samatar*, 152 Ohio App.3d 311, 2003-Ohio-1639, ¶ 113 (10th Dist.), quoting *State v. Craig*, 10th Dist. No. 99AP-739 (Mar. 23, 2000).

{¶ 7} An appellate court should reverse a conviction as against the manifest weight of the evidence in only the most "exceptional cases in which the evidence weighs heavily against the conviction," instances in which the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Martin* at 175.

{¶ 8} In order to sustain a conviction for aggravated robbery, in violation of R.C. 2911.01, as charged in the present case, the state was held to show that appellant, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, had a deadly weapon on his person or under his control and did possess or display or brandish the weapon. In order to prove the offense of robbery, as defined in R.C. 2911.02 and the indictment in the present case, the state was held to show that appellant, while attempting or committing a theft offense or in fleeing immediately after

the attempt or offense, had a deadly weapon on or about his person or under his control and did recklessly inflict or attempt to inflict or threaten to inflict physical harm on the victim. Alternatively, under the same robbery count of the indictment, the state could show that appellant, in attempting or committing a theft offense or in fleeing immediately after the theft or offense, did recklessly use or threaten the immediate use of force against another. To support the charge of kidnapping, as defined under R.C. 2905.01, the state was held to show that appellant, by force, threat or deception, removed the victim from the place where the victim was found or restrained the victim of his liberty with the purpose to facilitate the commission of a felony.

{¶ 9} The state established its case against appellant primarily through the testimony of the victim, Bradley Nguyen. Nguyen testified that, at the time of the robbery, he had been essentially homeless for perhaps 18 months, staying with friends and relatives or living outdoors. His unstable circumstances were largely the result of his illegal drug use, which had evolved to heroin use in the year preceding the robbery. Despite these circumstances, he was employed through most of this period and had a steady girlfriend.

{¶ 10} In early 2013, Nguyen moved in with a friend and his family, making a diligent effort to remain sober. He obtained a new job and began saving money to get an apartment where he could live with his girlfriend closer to his place of work. They secured a sublease from friends who were vacating an apartment in the Reynoldsburg area and began moving their possessions in. Nguyen had $650 in his pocket for rent and another $50 in his wallet for gas and other moving expenses.

{¶ 11} During the course of Nguyen's initial testimony, the state introduced a map and allowed him to indicate an apartment located at 5782 Channingway Court, which Nguyen identified as the apartment he intended to move into. On the day in question, Nguyen and his girlfriend had parked their car nearby with their possessions inside and were moving the possessions into the apartment. Late in the evening, a man approached Nguyen in the parking lot, and Nguyen recognized him as someone he knew from casual observation on a previous occasion but had never had a conversation or other contact with. Nguyen described the man as having a distinctive appearance, very tall and thin with tattoos on the left side of his face. Nguyen first observed this individual, later

identified as appellant's alleged accomplice, Alphonzo Evans, standing in the parking lot with a group of people.

{¶ 12} Evans approached Nguyen and stated that he had marijuana available for sale. Nguyen responded that he could not afford to buy it. Evans then offered to share some marijuana and smoke it with Nguyen if Nguyen would give him a ride someplace. Because Nguyen still had frozen food and other items in the car and his girlfriend was eager to complete the move, Nguyen was reluctant to take up the offer. Evans assured Nguyen that the ride would not take him far away and would cause little delay. Nguyen was interested in smoking marijuana that he otherwise would be unable to afford and eventually consented to give Evans a ride.

{¶ 13} Continuing his testimony and again referring to the proffered map, Nguyen pointed out the route that he and Evans followed for a few minutes as they drove to a nearby apartment complex, Century City. During the course of the drive, Evans used Nguyen's phone to call his own phone so that they would have each other's number in order to communicate for future marijuana transactions. Evans also used Nguyen's phone to call another person at their supposed destination to let that person know he was on the way with a companion.

{¶ 14} Upon their arrival at the Century City complex, Evans and Nguyen were met by a third individual, later identified as appellant. Nguyen described this man as also in his mid-twenties but of a much shorter, stockier build than Evans. Evans and his cohort then stated that it was too hot outside and there were too many other persons present to smoke marijuana in the parking lot and invited Nguyen to an upstairs apartment. When Nguyen entered the apartment, there was a woman present who left the front room at appellant's urging. Evans then stated that he had to use the bathroom, but returned immediately with a gun in his hand and initiated the robbery. Nguyen described the weapon as a large silver-plated revolver. The two men demanded that Nguyen empty his pockets and produce his wallet. Nguyen gave them his car keys, cell phone, and wallet containing $50.

{¶ 15} Disappointed with the contents of Nguyen's pockets, the robbers forced him to strip and discovered a small plastic pellet gun tucked into Nguyen's waistband. The robbers became upset and accused Nguyen of intending to rob them with the pellet gun.

At this point in the robbery, appellant became the primary actor, wielded the gun, and made the associated threats. They made Nguyen strip off all his clothes, at which time the $650 reserved for his rent fell out of his pocket. The robbers counted the money and told Nguyen to get dressed, allowing him to recover his wallet and associated identification. They threw his car keys at him but refused to return his cell phone or pellet gun. As Nguyen departed the apartment and descended the steps to his car, appellant repeatedly said that he would shoot Nguyen if he ever returned to the area.

{¶ 16} Nguyen was able to get in his car and immediately leave the complex, driving to a nearby Speedway gas station where he called 9-1-1. A Reynoldsburg police officer responded to the location, and Nguyen made a statement at that location. He accompanied Officer David Burks to the Century City apartment complex and pointed out the building and apartment where he had been robbed. Officer Burks then took him back to the Reynoldsburg police station. At the police station, Reynoldsburg police allowed Nguyen to log onto his cell phone account and see if his phone was in use by the robbers. They found that the account was not updated sufficiently to allow him to determine if this was the case.

{¶ 17} Nguyen stayed at the Reynoldsburg police station for the night, and the next day accompanied police as officers made a forced-entry raid on the apartment that was the scene of the robbery. Nguyen stayed with an officer in the parking lot some distance from the raid. Eventually the officers secured three individuals for Nguyen to identify, two men and a woman. Nguyen excluded the two men as his assailants. The third individual he identified as the female who was at the apartment the night before but had not participated in the robbery.

{¶ 18} Approximately four days later, Reynoldsburg police invited Nguyen to come to the police station and look at a photo lineup based on further information police had developed regarding possible suspects. He was able to identify appellant with 100 percent certainty as the stockier, shorter of his two assailants. Some time later, on or about June 10, Nguyen was shown another photo lineup and identified with 100 percent certainty Evans' picture as the taller, thinner of the pair, the one bearing facial tattoos.

{¶ 19} In his trial testimony, Nguyen further identified a picture of Evans holding a gun as depicting the same gun used in the robbery. He then identified appellant in open court as one of his robbers.

{¶ 20} On cross-examination, Nguyen testified that he had been arrested and convicted for an unrelated misdemeanor theft offense after the robbery occurred. He had failed to pay the resulting fine and court costs, leading to issuance of a warrant. He confirmed that the warrant was still outstanding on the day of the current trial and that he had only appeared in court after a discussion with the prosecutor over whether the outstanding warrant would be set aside for purposes of allowing him to testify without being taken into custody. Nguyen rejected the proposition that he was only testifying in order to fulfill an agreement to have the warrant set aside. Nguyen also denied on cross-examination that he had met Evans and appellant on the night in question in order to purchase quantities of marijuana for resale. Nguyen also denied the suggestion that he had accompanied Evans to the apartment in order to sell appellant or other persons some pills that Nguyen was carrying in a concealed container disguised as a pop can.

{¶ 21} Officer Burks testified for the prosecution and described his participation in the investigation following the robbery. Officer Burks testified that on the night in question he responded to a dispatch to the Speedway gas station located at Brice Road and Livingston Avenue. The victim had called in a robbery, and Officer Burks identified Nguyen as the reported victim when he arrived at the gas station. Nguyen gave Officer Burks physical descriptions of his robbers and the location of the apartment. Nguyen described the weapon as a large silver revolver.

{¶ 22} From Nguyen's description of the apartment, Officer Burks was able to identify it as apartment 6266 in the Century City apartment complex, differing only slightly from the number 6366 that Nguyen recalled at the time. Based on Nguyen's statement that the robber had used Nguyen's phone, Officer Burks attempted to assist Nguyen at the police station in finding what numbers had been called, since it would reveal one or both robbers' phone numbers. They were unable to ascertain these numbers at that time.

{¶ 23} The next day, Officer Burks took Nguyen to the vicinity as the SWAT team made a forced entry at the apartment in question. Nguyen then observed three persons

secured in the raid, excluding two of them as robbers while confirming the third as the non-participant female seen in the apartment when he first arrived with Evans.

{¶ 24} Officer Brian Marvin, also of the Reynoldsburg Division of Police, similarly testified regarding his participation in administering a blind photo lineup to Nguyen, during which Nguyen identified Evans as one of his robbers. Officer Marvin stated that during this procedure, the chief investigating officer on the case, Detective Kevin McDonnell, deliberately removed himself from the presence of Nguyen in order to avoid influencing the choice.

{¶ 25} Detective McDonnell testified that he was the lead investigator on the case. Upon being advised that a robbery investigation was commencing based on Nguyen's report, Detective McDonnell went to police headquarters, spoke with Officer Burks, and spoke with Nguyen. He executed an affidavit to obtain a search warrant. The next morning, officers executed, pursuant to the search warrant, a forced entry at the alleged scene of the crime. Because of the reported presence of a large handgun during the robbery, the raid was executed by the Reynoldsburg SWAT team. Detective McDonnell presented to Nguyen for identification the three adults secured during the raid and observed Nguyen's response that the two men were not involved in the robbery, and the female was present but not an active participant.

{¶ 26} Detective McDonnell identified various items taken from the apartment during the raid, including a digital scale and a pellet pistol. Attempts to locate Nguyen's cell phone by GPS tracking were unsuccessful. Having obtained information from the occupants of the apartment, Detective McDonnell obtained photo identification of appellant to eventually use in a photo lineup. Based on Nguyen's identification of the photo lineup and subsequent information obtained by officers during the course of the investigation, Columbus Police were able to locate and take appellant into custody.

{¶ 27} Detective McDonnell described results of his interview with appellant after arrest. Appellant made vague statements at first regarding events on the night in question, but eventually stated that an acquaintance known only as "J" who sold marijuana and was approximately six feet tall, slender, with tattoos on his face, had come over with an Asian-looking individual on the night in question. Presented with a photograph of Nguyen, appellant identified him as the person who accompanied "J" to the

apartment.  Appellant's sister was present in the apartment, and appellant sent her to a back room when they arrived.  Appellant and the two other men sat at a dining room table, and Nguyen took out a concealed container simulating a soda can, unscrewed it, and revealed that it contained Percocet and cocaine.  At this point, Nguyen produced and began playing with a toy-like gun.  This matched the description of the gun investigators later found in the apartment in a closet.  Appellant described Nguyen as extremely intoxicated and jittery during these proceedings.

{¶ 28} Detective McDonnell's recollection of some parts of appellant's statement was somewhat imprecise, but he believed that appellant's account of the proposed transaction was that Nguyen would either sell or trade the drugs in the soda can in exchange for marijuana.  Appellant and "J" concluded a marijuana transaction between themselves, but appellant did not describe any sort of transaction between Nguyen and the two other men.  At this point, according to appellant, "J" and Nguyen left together, and appellant told his sister to lock the front door.  Appellant stated that there were no guns present other than the toy BB gun brought and left behind by Nguyen.

{¶ 29} Based on this information, Detective McDonnell proceeded to attempt to locate the tall, tattoo-faced individual known by appellant as "J."  Working from information provided by cooperating informants and through use of electronic social media that allowed him to identify a suspect's Instagram account, Detective McDonnell was able to secure photographs of an individual matching the description of the tall, thin, tattoo-faced robber.  One photograph depicted this individual holding a silver .44 Magnum long-barreled revolver matching the weapon seen by Nguyen.  Based on this strong corroboration, investigators implemented a successful photo lineup of Evans and later executed an arrest.

{¶ 30} Detective McDonnell also investigated phone records for the two suspects and matched phone calls from Nguyen's phone to Evans' phone before the robbery as well as calls to appellant afterwards.  On cross-examination, Detective McDonnell confirmed that based on these phone records, there was evidence of a three-second call from Nguyen's phone to Evans' phone at 6:21 p.m. on May 15, 2013, the evening in question, at a time when Nguyen's version of events seemed to indicate that he did not know or have any reason to call Evans. The records reflected two later calls from Evans to Nguyen, one

at 10:55 p.m. and one at 11:04 p.m., followed by three more from Evans to Nguyen at 11:45, 11:56, and 11:58 p.m. Finally, the records reflected calls at 12:05, 12:11, and 12:15 a.m. on May 16 that corresponded to Nguyen's account of calls made by Evans on Nguyen's phone while they drove. Detective McDonnell conceded that the earlier phone calls in the records did not corroborate Nguyen's account of when calls were placed to and from his phone on the night in question.

{¶ 31} Detective McDonnell further stated on cross-examination that no DNA, fingerprint or drug samples were tested for the digital scale or BB gun taken from the apartment during the raid.

{¶ 32} The state recalled Nguyen to the stand to explain the discrepancy between the phone records and Nguyen's initial version of events. Nguyen testified that the earlier call at 6:21 p.m. on the night in question may have been, in fact, when he was first approached by appellant and asked for a ride and that Nguyen actually did not offer the ride until later in the evening, when the rest of the events transpired. Similarly, Nguyen testified that the calls at 10:55 and 11:04 p.m. also involved him telling Evans that he was not yet ready to drive, and the calls at 11:45, 11:56, and 11:58 p.m. involved him telling Evans that he was almost ready. The three later calls occurred during the drive, as described in Nguyen's earlier testimony. Nguyen stated that there were several moving trips back and forth from Nguyen's girlfriend's current apartment to the new apartment during this time, accounting for the delay. On re-cross, Nguyen persisted with his new account of the timing of phone calls and the contact between him and Evans on the night in question. Nguyen denied that the delay was due to his efforts to gather $700 in pursuit of a drug deal with Evans and appellant.

{¶ 33} Appellant asserts that if we weigh the evidence and all reasonable inferences and consider the credibility of witnesses, we must conclude that the jury clearly lost its way in resolving conflicts in the evidence and finding that the evidence presented by the state supports the elements of the charged offenses. Appellant's principal argument is that the jury should not have given credibility to Nguyen's account of events because of the inconsistencies in Nguyen's initial testimony about the timing of events and phone calls in question. Appellant also stresses that Nguyen testified only after having the warrant stemming from his theft conviction set aside. Appellant also points out that law

enforcement failed to test physical evidence in the form of the digital scale found at the apartment, which would have revealed whether it was used for a drug transaction.

{¶ 34} Viewing the evidence as a whole, we cannot say that the jury lost its way in the present case. First, Nguyen's admitted history of drug use and his probable willingness to minimize his involvement with drugs on or about the date of the crime is not particularly probative. "Even if the victim were a drug addict, his status does not suggest that he could not be the victim of a crime or that defendant could not steal from him." *State v. Blackburn*, 10th Dist. No. 12AP-217, 2012-Ohio-6229, ¶ 17. Officer Burks described Nguyen as coherent and not visibly impaired on the night he called to report the robbery. This is in direct contradiction to appellant's description of Nguyen as intoxicated on the night in question.

{¶ 35} Similarly, the inconsistencies regarding timing were largely resolved by Nguyen's testimony upon recall at the close of the state's case. While the jury could well have chosen to discount Nguyen's rehabilitative testimony under these conditions, the jury could also choose to discount Nguyen's reluctance to expand the scope of his interaction with Evans prior to the robbery and believe the essential elements regarding the robbery itself.

{¶ 36} Finally, with respect to the warrant, we note that it pertained only to his failure to pay restitution in court costs associated with a municipal court conviction that was otherwise still in force. The temporary set aside of a warrant without any further inducement in terms of mitigation of the underlying conviction or prosecution of an unrelated case is not particularly probative of Nguyen's motive for testifying in the present case.

{¶ 37} These circumstances go to weight and credibility, and the jury chose to give credibility to Nguyen's testimony. As set forth above, the credibility of witnesses is a matter for determination by the trier of fact. Nguyen's testimony was comprehensive if occasionally inconsistent. The jury was free to believe some, all or none of that testimony and manifestly chose to believe the consistent portions and conclude that the inconsistent sections did not impact Nguyen's overall credibility. Trial counsel for appellant thoroughly explored the inconsistencies between Nguyen's initial account and his later testimony when recalled to the stand. Counsel also fully addressed Nguyen's drug history

and potential involvement as a possible participant in a drug transaction. The jury was also fully made aware that Nguyen had testified only after expressing his reluctance to appear in court and possibly be detained on the outstanding warrant and having that warrant set aside for purposes of allowing him to testify.

{¶ 38} The jury was also fully informed by testimony of investigating officers on cross-examination that no physical evidence in the form of fingerprints, drug testing or DNA testing was undertaken on Nguyen's phone, the scale or other items. With respect to the lack of physical evidence, the state can persuasively point to the fact that this case was not based on such evidence. If the state chose not to develop it further, the defense could have pursued any testing that it thought necessary. Under the circumstances of this case, it is difficult to discern any benefit to appellant from such testing, particularly testing a digital scale quite likely used in drug transactions no matter what its relevance to the current case. Any other insistence on the lack of fingerprint or DNA analysis merely calls for extended speculation solely along lines adverse to the state's case and does not support reversal on manifest-weight grounds. *State v. Roush*, 10th Dist. No. 12AP-201, 2013-Ohio-3162, ¶ 41. *See also State v. Williams*, 10th Dist. No. 08AP-719, 2009-Ohio-3237, ¶ 35 (finding no evidence of prejudice resulting from trial counsel's failure to call a witness to testify where the defendant did not submit an affidavit from the witness and the court did not know the import of the potential testimony, thus rendering it "pure speculation to conclude that the result of appellant's trial would have been different"); *State v. Stalnaker*, 9th Dist. No. 21731, 2004-Ohio-1236, ¶ 9 (because the court had no way of knowing what the witness would have said at trial, it could not find that the witness's failure to appear prejudicially affected the defendant); *State v. Wiley*, 10th Dist. No. 03AP-340, 2004-Ohio-1008, ¶ 30.

{¶ 39} Based on our comprehensive review of the evidence heard at trial, we find that the elements of aggravated robbery as indicted, robbery as indicted, and kidnapping as indicted were supported by evidence which, if believed by the jury, would support conviction on each charge. Appellant's convictions are not against the manifest weight of the evidence heard at trial, and appellant's first assignment of error is accordingly overruled.

### B. Second Assignment of Error

{¶ 40} Appellant's second assignment of error asserts that the trial court erred when it failed to merge appellant's convictions for robbery and aggravated robbery. Appellant points out that aggravated robbery and robbery, when committed against the same victim and with the same animus, are allied offenses of similar import and that the state is required to choose only one offense on which the court will enter the judgment of conviction and sentence. *State v. Harris*, 122 Ohio St.3d 373, 2009-Ohio-3323, ¶ 19. Appellant, in so arguing, does not dispute that the trial court did merge these convictions for purposes of sentencing and properly required the state to elect the sole count on which sentence should be imposed. Rather, appellant asserts any "conviction"–in the sense of an underlying finding of guilt–on the robbery charge should not be reflected in the court's final judgment, since this crime is subsumed into the allied offense of aggravated robbery. Appellant thus contends that the judgment in his case should reflect, at worst, "conviction" on two felonies, aggravated robbery, and kidnapping, which would then further merge for sentencing purposes. In this, appellant essentially asks us to adopt the dissenting view in *State v. Whitfield*, 124 Ohio St.3d 319, 327, 2010-Ohio-2, which proposed that under Ohio's multiple count statute, R.C. 2941.25, merger should operate to negate the finding of guilt on the subsumed offense, rather than solely for sentencing purposes.

{¶ 41} The majority in *Whitfield*, however, reached a different conclusion as to the application of R.C. 2941.25: "[F]or purposes of R.C. 2941.25, a 'conviction' consists of a guilty verdict *and* the imposition of a sentence or penalty." (Emphasis sic.) *Id.* at ¶ 12, citing *State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, ¶ 135; *State v. McGuire*, 80 Ohio St.3d 390, 399 (1997) ("a conviction consists of a verdict and a sentence"). By defining "conviction" to require both a finding of guilt and imposition of a sentence, the majority in *Whitfield* focused on the statute's objective of preventing multiple punishments for the same underlying conduct. *Id.* at ¶ 18. This holding remains the controlling law in Ohio regarding merger and sentencing on multiple counts.

{¶ 42} The record here makes clear that not only did the trial court merge the two robbery offenses, it also merged the kidnapping offense for purposes of sentencing: "The Defendant shall serve nine (9) years, as to Count One at the Ohio Department of

Rehabilitation and Corrections.  Counts Two and Three merge into Count One for purposes of sentencing." (Emphasis omitted.)  (Mar. 17, 2014 Judgment Entry, 1.)  The trial court complied with R.C. 2941.25 and *Whitfield.*  Appellant's second assignment of error lacks merit and is overruled.

## II. CONCLUSION

{¶ 43} In accordance with the foregoing, appellant's first and second assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

CONNOR and DORRIAN, JJ., concur.

_____