[Cite as *State v. Borger*, 2023-Ohio-1124.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220191 |
| | | TRIAL NO. 21CRB-18004 |
| Plaintiff-Appellee, | : | |
| vs. | | |
| | : | |
| LARRY BORGER, | | *O P I N I O N.* |
| | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: April 5, 2023

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Paula E. Adams,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Jeffrey J. Cutcher*, for Defendant-Appellant.

**Bock, Judge.**

{¶1}   Defendant-appellant Larry Borger appeals his conviction for the unauthorized use of a motorcycle in violation of R.C. 2913.03(A). In three assignments of error, he argues that he established a reasonable-mistake defense as codified in R.C. 2913.03(C)(1) and that the trial court erred when it ordered restitution. We disagree and affirm the trial court's judgment.

## I. Facts and Procedure

{¶2}   In October 2021, Borger was driving a motorcycle through a Cincinnati suburb displaying an expired Colorado license plate. Green Township Police Officer Troy Biggs pulled over Borger because of the plate and Borger's lack of eye protection. After some confusion, Biggs found the VIN number on the underside of the motorcycle and discovered that John Abbotsmith had reported the motorcycle stolen. Borger was charged with unauthorized use of the motorcycle under R.C. 2913.03(A).

{¶3}   At trial, the state presented testimony from Biggs and Abbotsmith. Abbotsmith testified that he reported the motorcycle stolen in July 2021, after the motorcycle "broke down on the side of the road [in Norwood] and I left it there." When Abbotsmith returned, it was gone. After Abbotsmith discovered that the motorcycle was not impounded as he initially suspected, he reported it stolen.

{¶4}   Biggs described his October 2021 traffic stop of Borger. After a search of the VIN revealed that the motorcycle had been stolen, Borger explained that he "found the motorcycle on the side of the road in the trash, two gentlemen were placing it there. So [Borger] did ask if they were throwing it away, and they said yes. So Mr. Borger said, 'Can I have it?' and ultimately got the motorcycle." As Biggs recalled, Borger clarified that two individuals were discarding the motorcycle in the trash on Ridge Road in Norwood, Ohio. Borger told Biggs he had made some minor repairs to

2

the motorcycle. Biggs testified that another officer had described seeing the motorcycle in Borger's garage during an August 2021 search of his home.

{¶5} Borger's friend and roommate Jason Chapman testified in Borger's defense that the motorcycle was found "back in the trash by Home Depot" in late July. Initially, the motorcycle "did not" run, but Borger and others worked for weeks to restore the motorcycle. Chapman was present in August 2021 as probation officers searched Borger's home when the motorcycle was in Borger's garage.

{¶6} The trial court found Borger guilty of unauthorized use of a motor vehicle. At the sentencing-and-restitution hearing, the state's evidence consisted of 16 photographs and testimony from Abbotsmith. He described the motorcycle as a rare "classic BMW bike" and identified the modifications made to the motorcycle, which needed repair. The battery box cover was missing. So too were the fork boot and valve cover. The ignition and key were altered and needed replacing. A gasoline leak damaged the fuel tank, which also needed replacing. While Abbotsmith estimated the motorcycle needed more than $5,000 in parts, he requested mostly used parts to minimize the cost of the repairs. All told, he asked for $2,074.69 in restitution to cover the replacement parts based on eBay listings. The $2,074.69 was "strictly for the parts that were damaged," and excluded the costs of labor and paint.

{¶7} Borger testified that the motorcycle was in disrepair when he acquired it in 2021. Borger explained that he was "on my way to Home Depot, and I saw the couple pushing this bike out to the curb, I stopped and asked them, and they said they was throwing it away[, and] even helped me load it up onto the truck." Borger denied making any modification to the key and ignition. Rather, he insisted that his repairs and modifications consisted of adding a wire harness, modifying the wiring, changing the oil, tuning the carburetor, and cleaning the air filter.

**{¶8}** The trial court sentenced Borger to jail time and community control and ordered $2,074.69 in restitution.

## II. Law and Analysis

**{¶9}** On appeal, Borger raises three assignments of error. Borger argues his first and second assignments of error together. In his first assignment of error, he maintains that the trial court failed to consider the affirmative defense codified in R.C. 2913.03(C)(1). In his second assignment of error, he argues that the manifest weight of the evidence proved his affirmative defense. In his third assignment of error, he challenges the trial court's restitution order.

### Borger Failed to Establish an Affirmative Defense

**{¶10}** Borger argues that the evidence produced at the trial established the reasonable-mistake defense as codified in R.C. 2913.03(C)(1). In essence, Borger maintains that the weight of the evidence supports a finding that he reasonably, though mistakenly, believed he was authorized to use the motorcycle. In support, Borger relies on his explanation to Officer Biggs that two individuals discarded the motorcycle in the trash on Ridge Road. Chapman, Borger's roommate and friend, testified to the same. In addition, Borger argues that Biggs's description of the probation search, the "query" run on the license plate, and the lack of a follow-up investigation, make Borger's mistaken belief that he was authorized to use the motorcycle reasonable. The trial court did not address his affirmative defense.

**{¶11}** We review affirmative defenses under a manifest-weight standard. *See State v. Thompson,* 2017-Ohio-8375, 99 N.E.3d 1035, ¶ 20 (10th Dist.). A manifest-weight argument "refers to a greater amount of credible evidence and relates to persuasion." *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19. This court sits as the 13th juror, weighing the evidence and considering the

4

credibility of witnesses to see if " 'the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' " *Id.* at ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). But Borger must overcome "the presumption in favor of the finder of fact," that " 'every reasonable intendment and every reasonable presumption must be in favor of the judgment and findings of fact.' " *Id.,* quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3.

{¶12} Under R.C. 2913.03(A), it is a crime to "knowingly use or operate an aircraft, motor vehicle, motorcycle, motorboat, or other motor-propelled vehicle without the consent of the owner or person authorized to give consent." Relevant here, an affirmative defense exists when "[a]t the time of the alleged offense, the actor, though mistaken, reasonably believed that the actor was authorized to use or operate the property." R.C. 2913.03(C)(1). The defendant carries the burden of establishing the affirmative defense by a preponderance of the evidence. R.C. 2901.05(A).

{¶13} Borger does not dispute that he used the motorcycle without Abbotsmith's consent. Rather, this case hinges on whether Borger knew that he lacked consent, or whether Borger established that he was acting under a reasonable but mistaken belief.

{¶14} But Borger failed to show, by a preponderance of the evidence, that he operated the motorcycle under a *reasonable* mistaken belief that he was authorized to do so. Assuming Borger's explanation that two individuals were discarding the motorcycle and gifted it to him proves that Borger had a mistaken belief that he was authorized to use the motorcycle, it fails to show that the belief was *reasonable.*

5

Borger's explanation was consistent—two anonymous individuals discarding the motorcycle gifted it to him after he asked, "Can I have it?" But there is nothing in the record identifying the two people as the owners of the motorcycle, or any suggestion that Borger was provided the title to the motorcycle. In other words, it is unreasonable for Borger to have believed that anonymous strangers would legally transfer a motorcycle in this manner.

{¶15} And we can infer that Borger knew his use of the motorcycle was unauthorized from the modifications made to the motorcycle. Specifically, the motorcycle's side panels, which identified the model type, had been removed and the ignition was replaced. These modifications are consistent with an attempt to disguise the motorcycle. Further, Borger's reliance on the search of his home by probation officers is unconvincing. While the officers ran a query search of the Colorado license plate, an unsuccessful license plate query does not negate the suspicious way in which Borger acquired the motorcycle.

{¶16} We hold that the trial court did not lose its way and did not create a manifest miscarriage of justice when it found Borger guilty of unauthorized use of a motorcycle in violation of R.C. 2913.03(A). Borger failed to establish the reasonable-mistake defense under R.C. 2913.03(C)(1) by a preponderance of the evidence. We overrule Borger's first two assignments of error.

The Restitution Order Was Proper

{¶17} In his third assignment of error, Borger argues that the trial court abused its discretion when it ordered restitution for damages Borger contends are unrelated to his unauthorized use. Borger argues that the evidence in this case tends to show the motorcycle was damaged prior to his acquisition of the motorcycle. Rather than causing damage, Borger argues that he repaired the motorcycle.

{¶18} We review nonfelony restitution orders for an abuse of discretion. *State v. Folson*, 1st Dist. Hamilton No. C-220029, 2023-Ohio-55, ¶ 10. Under R.C. 2929.28(A)(1), a victim must prove the amount of restitution by a preponderance of the evidence. A trial court may impose restitution "in an amount based on the victim's economic loss." R.C. 2929.28(A)(1). The trial court's restitution order "must be supported by competent, credible evidence." *Folson* at ¶ 10. Restitution orders "shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense." R.C. 2929.28(A)(1). Economic loss consists of "any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense," including "any property loss * * * incurred as a result of the commission of the offense." R.C. 2929.01(L).

{¶19} In essence, Borger argues that his unauthorized use of the motorcycle was not the direct and proximate cause of Abbotsmith's economic loss. His unauthorized use of the motorcycle was the direct and proximate cause of the damage if the damage was foreseeable and the natural product of Borger's unauthorized use. *See Folson* at ¶ 12, quoting *State v. Yerkey*, Slip Opinion No. 2022-Ohio-4298, ¶ 16. Conduct is the direct cause of a result if "the result would not have occurred 'but for' the conduct." *State v. Lovelace*, 137 Ohio App.3d 206, 216, 738 N.E.2d 418 (1st Dist.1999). Turning to proximate cause, the result must be foreseeable–"when the result varied from the harmed intended or hazarded, it must be determined that the result achieved was not so extraordinary or surprising that it would be simply unfair to hold the defendant criminally responsible for something so unforeseeable." *Id.,* quoting Wayne R. LaFave & Austin W. Scott, *Criminal Law*, Section 35, at 246 (1st Ed.1972). Here, Borger's unauthorized use was the direct and proximate cause of the modifications to the motorcycle. Without Borger's unauthorized use, the

7

modifications would not have occurred. Further, the modifications described by Abbotsmith were consistent with a person's unauthorized use of the motorcycle.

{¶20} We need to look no further than our opinion in *State v. Lynn*, 1st Dist. Hamilton No. C-150569, 2016-Ohio-2849, ¶ 6. In *Lynn*, we upheld a restitution award to compensate a victim for damage to her truck following Lynn's unauthorized use of the truck, when victim testimony credibly established that "the truck was not damaged when she reported it stolen, and it was damaged when police recovered it." *Id.* at ¶ 6. While Lynn argued "that the truck was damaged before she used it without consent," the trial court was tasked with determining "which version was more credible." *Id.* We upheld the restitution award because the court found the victim credible, and so "it was reasonable for the court to conclude that the damage occurred while Lynn was using the truck, and that, but for Lynn's unauthorized use, the truck would not have been damaged." *Id.* at ¶ 8. So too here. It was reasonable to conclude that Borger modified the motorcycle throughout his unauthorized use.

{¶21} Borger attempts to distinguish the facts of this case from *Lynn* and emphasizes his cooperation with police, his admission to having made some repairs, and his offer of "parts at the house" to Abbotsmith as evidence of his credibility as a witness. But "[t]he trial court was in the best position to judge the credibility of each of the witnesses, and it was entitled to believe some, all, or none of their testimony." *State v. Shepard*, 1st Dist. Hamilton No. C-190747, 2021-Ohio-964, ¶ 62. Abbotsmith credibly established, through his testimony and pictures of the motorcycle before and after Borger's unauthorized use, that the motorcycle was not damaged before Borger's use and heavily modified when returned to Abbotsmith. As we explained in *Lynn,* the trial court's restitution order required a credibility determination, and nothing in the record suggests that Abbotsmith's testimony was not credible.

8

**{¶22}** Borger analogizes the facts of this case to *State v. Littlefield*, 4th Dist. Washington No. 02CA19, 2003-Ohio-863, where the restitution award for damage sustained during the theft of the victim's car was reversed on appeal because Littlefield was convicted for receiving stolen property, not for the theft of the car. *Id*. at ¶ 22. Consistent with *Littlefield*, we recently held that "an offender cannot be ordered to pay restitution for damage arising from a crime of which the offender was not convicted." *Folson*, 1st Dist. Hamilton No. C-220029, 2023-Ohio-55, at ¶ 13, citing *State v. Richmond*, 10th Dist. Franklin No. 17AP-366, 2018-Ohio-147, ¶ 11. But in *Littlefield*, the court explained that "[i]f the state could have shown that Littlefield damaged the car while it was in his possession then, of course, the court's restitution order would be valid." *Littlefield* at ¶ 22. Here, Borger's testimony established that he modified the motorcycle when it was in his possession. The modifications were consistent with a person's attempt to disguise the motorcycle and facilitate the unauthorized use of the motorcycle.

**{¶23}** In sum, the trial court did not abuse its discretion when it ordered restitution for repairing the modifications made to the motorcycle while it was in Borger's possession. We overrule Borger's third assignment of error.

### III. Conclusion

**{¶24}** We overrule Borger's three assignments of error and affirm the trial court's judgment.

Judgment affirmed.

**ZAYAS, P.J.,** and **BERGERON, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.

9